T.C. Memo. 2005-83

UNITED STATES TAX COURT

DUANE E. HUDSPATH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5865-04L.               Filed April 11, 2005.

Duane E. Hudspath, pro se.

Jeffrey E. Gold, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  This case is before the Court on respon-
dent's motion for summary judgment (respondent's motion).  We
shall grant respondent's motion.

## Background

The record establishes and/or the parties do not dispute the
following.

At the time he filed the petition in this case, petitioner (petitioner or Mr. Hudspath), who is legally blind and must rely on others to read to him, resided in Stephens City, Virginia.

In 1994, petitioner purchased a chiropractic business and operated it as a sole proprietor. In the mid-1990s, petitioner changed the form of the business and formed (1) Stephens City Chiropractic (SCC), a limited liability company, (2) Fair Hollow Trust, a domestic trust, and (3) Fair Exit Trust, a foreign trust. Petitioner transferred 90 percent of his interest in SCC to Fair Hollow Trust and retained a 10-percent interest in SCC. Petitioner subsequently transferred his interest in Fair Hollow Trust to Fair Exit Trust.

In August 1996, petitioner formed WIN Enterprise LC (WIN), a retail sales business. Petitioner transferred 80 percent of his interest in WIN to Fair Hollow Trust and retained a 10-percent interest in WIN. A third person (Laurie Eakes) owned the remaining 10-percent interest in WIN.

According to respondent's records, petitioner was the tax matters partner for both SCC and WIN. On March 10, 1999, the Internal Revenue Service (IRS) sent to petitioner as the tax matters partner of WIN a notice of beginning of administrative proceeding.[1] On April 14, 2000, the IRS sent by certified mail

---

[1]Respondent's records do not disclose when the IRS sent to petitioner as the tax matters partner of SCC a notice of begin-
(continued...)

to petitioner as the tax matters partner of SCC a notice of final partnership administrative adjustment (FPAA) with respect to the taxable years 1996 and 1997 of SCC (SCC-FPAA).[2]  In the SCC-FPAA, the IRS notified petitioner as the tax matters partner of SCC that SCC was a sham partnership because Fair Hollow Trust, one of its partners, was a sham trust and that consequently SCC was invalid because petitioner was the only partner.

On April 14, 2000, the IRS sent by certified mail to petitioner as the tax matters partner of WIN an FPAA with respect to the taxable years 1996 and 1997 of WIN (WIN-FPAA).  In the WIN-FPAA, the IRS notified petitioner as the tax matters partner of WIN that Fair Hollow Trust, one of the partners of WIN, was a sham trust created by petitioner and that consequently Fair Hollow Trust's share of the partnership items of WIN was allocated to him.

On April 14, 2000 (the same date on which the IRS issued the respective SCC-FPAA and WIN-FPAA to Mr. Hudspath as the tax matters partner of each entity), the Commissioner sent him a notice of deficiency for his taxable years 1996 and 1997 (1996

_____

[1](...continued)
ning of administrative proceeding.

[2]The IRS mailed the SCC-FPAA to 5436 Main Street, Stephens City, Virginia 22655-2829, which is the address for petitioner listed in the petition in the instant case.

and 1997 notice). That notice made certain determinations relating to the adjustments resulting from the IRS's respective examinations of SCC and WIN (TEFRA determinations), as well as certain other unrelated determinations (non-TEFRA determinations). In response to the 1996 and 1997 notice, on July 14, 2000, Mr. Hudspath filed a petition with the Court, thereby commencing Hudspath v. Commissioner, docket No. 7901-00 (petitioner's non-TEFRA case at docket No. 7901-00).

In response to the respective SCC-FPAA and WIN-FPAA, on July 17, 2000, Jimmy C. Chisum (Mr. Chisum) filed a petition with the Court purportedly on behalf of SCC and WIN, thereby commencing Stephens City Chiropractic, PLC v. Commissioner, docket No. 7982-00 (TEFRA case at docket No. 7982-00 or partnership-level proceeding). On April 2, 2001, the Tax Court granted the motion of the Commissioner to dismiss the TEFRA case at docket No. 7982-00 for lack of jurisdiction because Mr. Chisum, the purported trustee and the purported tax matters partner of SCC and of WIN, failed to establish his authority to act on behalf of those respective entities.

On December 7, 2001, the Court granted the Commissioner's motion to dismiss for lack of jurisdiction and to strike petitioner's non-TEFRA case at docket No. 7901-00 insofar as it pertained to the TEFRA determinations in the 1996 and 1997 notice (respondent's motion). That was because such notice insofar as it pertained to such determinations was invalid and prohibited by

section 6225[3] because of the partnership-level proceeding (i.e., the TEFRA case at docket No. 7982-00). The Commissioner specifically reserved in respondent's motion the right to proceed under sections 6221 through 6233 in order to deal with flowthrough computational adjustments resulting from the respective SCC-FPAA and WIN-FPAA and to issue any affected items notice of deficiency.

On April 19, 2002, Mr. Hudspath signed, and on April 24, 2002, the Commissioner's counsel signed, a stipulated decision document and a stipulation (parties' stipulation) in petitioner's non-TEFRA case at docket No. 7901-00, which they submitted to the Court. On April 26, 2002, pursuant to the stipulation of the parties, the Court entered a decision in petitioner's non-TEFRA case at docket No. 7901-00, which stated, inter alia, that there were overpayments of $716 and $709 for Mr. Hudspath's taxable years 1996 and 1997, respectively,[4] and that he was not liable for either 1996 or 1997 for the accuracy-related penalty under section 6662(a). The parties' stipulation in petitioner's non-TEFRA case at docket No. 7901-00 provided:

> 1. Petitioner reported certain items on his 1996 and 1997 income tax returns related on his investment

---

[3]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[4]The overpayments were the result of increased deductions for interest expenses paid by Mr. Hudspath on behalf of SCC in 1996 and 1997.

in WIN Enterprise, LC and Stephens City Chiropractic, PLC.

2.  WIN Enterprise, LC and Stephens City Chiropractic, PLC are partnerships which are subject to the unified partnership audit and litigation procedures set forth in I.R.C. §§ 6221 et seq. (the TEFRA partnership procedures).

3.  For purposes of computing the overpayment in this case, petitioner's partnership items relating to WIN Enterprise, LC and Stephens City Chiropractic, PLC have been treated as if they were correctly reported on petitioner's income tax returns for the 1996 and 1997 taxable years and they have not been adjusted as part of this docketed proceeding.

4.  The tax treatment of petitioner's partnership items relating to WIN Enterprise, LC and Stephens City Chiropractic, PLC will be resolved in a separate partnership proceeding conducted in accordance with the TEFRA partnership procedures.

5.  The adjustments necessary to apply the results of the TEFRA partnership proceeding described in subparagraph 4 to petitioner, shall be treated as computational adjustments under I.R.C. § 6231(a)(6) and assessed, credited or refunded accordingly.

6.  To the extent that the computation of petitioner's tax liability which properly reflects the tax treatment of the partnership items relating to WIN Enterprise, LC and Stephens City Chiropractic, PLC, as determined in the TEFRA partnership proceeding described in subparagraph 4, would also result in a change in petitioner's tax liability attributable to nonpartnership items, as previously determined in this docketed proceeding, such change may be treated as a computational adjustment under I.R.C. § 6231(a)(6) and assessed, credited or refunded accordingly.

At the time the parties executed the parties' stipulation in petitioner's non-TEFRA case at docket No. 7901-00, the Court had already dismissed for lack of jurisdiction the TEFRA case at

docket No. 7982-00 (i.e., the partnership-level proceeding).

On June 3, 2002, the IRS sent a written notice to Mr. Hudspath (June 3, 2002 notice) in which the IRS notified him, inter alia, that there were certain adjustments set forth in the respective SCC-FPAA and WIN-FPAA that the IRS made during the examinations by the IRS of the respective taxable years 1996 and 1997 of SCC and WIN and that were the subject of the partnership-level proceeding (the TEFRA case at docket No. 7982-00),[5] which affected petitioner's taxable years 1996 and 1997. The June 3, 2002 notice indicated that, as a result of such adjustments, there were flowthrough computational adjustments resulting in increases in (1) petitioner's income of $18,347 and $21,123 for his taxable years 1996 and 1997, respectively, and (2) his Federal income tax (tax) of $2,754 and $3,165 for such respective years.

On or about June 25, 2002, the IRS assessed against petitioner (1) additional tax of $2,754 and interest of $1,057.36 for his taxable year 1996 and (2) additional tax of $3,165 and interest of $954.60 for his taxable year 1997. Those assessments were attributable to the flowthrough computational adjustments resulting from the respective SCC-FPAA and WIN-FPAA that are described in the preceding paragraph.

---

[5]On Apr. 2, 2001, the Court dismissed the partnership-level proceeding for lack of jurisdiction.

On June 25, 2002, the IRS sent a notice of balance due with respect to the above-described assessments.

On June 21, 2002, the Commissioner sent to Mr. Hudspath an affected items notice of deficiency (affected items notice) in which the Commissioner determined that there were respective increases in Mr. Hudspath's income for 1996 and 1997 attributable to flowthrough adjustments from the respective SCC-FPAA and WIN-FPAA. In the affected items notice, the Commissioner determined deficiencies in Mr. Hudspath's tax for his taxable years 1996 and 1997 of $2,739 and $4,044, respectively, and an accuracy-related penalty under section 6662(a) for his taxable year 1996 of $955.40.

In response to the affected items notice, on September 16, 2002, Mr. Hudspath filed a petition with the Court, thereby commencing Hudspath v. Commissioner, docket No. 14741-02 (petitioner's TEFRA-related case at docket No. 14741-02 or petitioner's affected items proceeding). In that case, petitioner made the same type of argument that he is advancing in the instant case, viz., the Commissioner made material misrepresentations with respect to the parties' stipulation in petitioner's non-TEFRA case at docket No. 7901-00 in that that stipulation stated that "The tax treatment of petitioner's partnership items relating to * * * [WIN and SCC] will be resolved in a separate partnership proceeding conducted in accordance with the TEFRA

partnership procedures." (Emphasis added.) Consequently, according to Mr. Hudspath, the Court should not sustain the determinations in the affected items notice. Hudspath v. Commissioner, T.C. Memo. 2004-75.

The Court rejected Mr. Hudspath's position in petitioner's affected items proceeding (petitioner's TEFRA-related case at docket No. 14741-02) and sustained the determinations in the affected items notice that there were additional deficiencies in petitioner's tax of $2,739 and $4,044 for 1996 and 1997, respectively, but did not sustain the determination in that notice that petitioner is liable for 1996 for the accuracy-related penalty under section 6662(a). Id.

On or about April 19, 2003, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to petitioner's respective unpaid liabilities for his taxable years 1996 and 1997 that were attributable to flowthrough computational adjustments resulting from the respective SCC-FPAA and WIN-FPAA (petitioner's respective unpaid liabilities for 1996 and 1997), which had been the subject of the partnership-level proceeding (the TEFRA case at docket No. 7982-00) that the Court dismissed for lack of jurisdiction on April 2, 2001.[6]

_____

[6]The notice of intent to levy did not include the respective deficiencies of $2,739 and $4,044 for petitioner's taxable years
(continued...)

On or about May 9, 2003, in response to the notice of intent to levy, petitioner filed Form 12153, Request for a Collection Due Process Hearing (petitioner's Form 12153), and requested a hearing with respondent's Appeals Office (Appeals Office). Petitioner attached a document to petitioner's Form 12153 (petitioner's attachment to Form 12153), in which he claimed that the notice of deficiency for 1996 and 1997 was "facially void" and advanced other statements, contentions, and arguments that the Court finds to be frivolous and/or groundless.

On October 21, 2003, an Appeals Office settlement officer (settlement officer) sent petitioner a letter (October 21, 2003 letter) acknowledging receipt of petitioner's Form 12153. That letter stated in pertinent part:

> Based on my review of the case, the assessments which are currently outstanding for collection (as referenced on Letter 1058 mentioned above), were TEFRA flow-through adjustments from two TEFRA entities: Winn [sic] Enterprises, LC and Stephens City Chiropractic, PLC.
>
> There are additional PROPOSED assessments, resulting from affected items from the TEFRA entities. These proposed assessments were explained in a Notice of Deficiency which I can see you have petitioned to Tax Court. However, please do not confuse the two issues. The amounts addressed on Letter 1058, for the tax years 1996 and 1997, do not include these additional PROPOSED assessments. Included are only the amounts for which

---

[6](...continued)
1996 and 1997 that the Court sustained in petitioner's affected items proceeding. Hudspath v. Commissioner, T.C. Memo. 2004-75. Consequently, the assessments with respect to those respective deficiencies are not at issue in the instant case.

you have already been determined to be liable.

Therefore, the scope of this collection due process hearing will focus only on a proposed collection alternative to the proposed levy action on the 1996 and 1997 balances referenced in Letter 1058. **As a collection alternative to the lien or levy action proposed, you may request consideration of either an Offer in Compromise or an Installment Agreement; however, you MUST provide Form 433A (Collection Information Statement for Individuals) or Form 433B (Collection Information Statement for Businesses), and/or Form 656 (Offer in Compromise package), AT THE TIME OF YOUR SCHEDULED HEARING. Furthermore, neither collection alternative will be considered if you are not in filing compliance at the time of your Appeals conference.**

In response to the October 21, 2003 letter, petitioner sent the settlement officer a letter dated November 4, 2003 (November 4, 2003 letter). In the November 4, 2003 letter, petitioner, inter alia, informed respondent that he needed to reschedule the hearing with the settlement officer because of his disability and that he would be bringing a stenographer to record that hearing.

Petitioner also sent respondent a letter dated November 14, 2003 (November 14, 2003 letter). In the November 14, 2003 letter, petitioner stated in pertinent part:

> After our telephone conversations of November 10 and November 13 [2003], you have convinced me of the benefit to me of setting up an installment plan with you, rather than waiting to deal with a collections officer.
>
> I will only enter into such an agreement with the documented understanding that I do not think I owe this money; I am simply making this agreement as a convenience to myself. I intend to pursue violation of due process and fraud on the court in this specific matter with subsequent court actions.

> In order to protect my rights in this matter, I must be able to bring a stenographer to the meeting so there is a third party, written record of the proceeding. * * *

On December 18, 2003, the settlement officer held a hearing with petitioner that the settlement officer audiotaped and that petitioner's stenographer recorded. During that hearing, the settlement officer explained the collection process to petitioner, and petitioner submitted to the settlement officer Form 433D, Installment Agreement.

On February 9, 2004, the Appeals Office issued to petitioner a notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination). The notice of determination stated in pertinent part:

> Summary of Determination
>
> The taxpayer voluntarily entered into a streamline installment agreement for $130.00/month payable on the 26th of each month. The taxpayer paid his first installment payment and also the one-time user fee of $43.00. Enforced collection action will not occur while this agreement is in place. * * *

An attachment to the notice of determination stated in pertinent part:

> SUMMARY AND RECOMMENDATION
>
> * * * * * * *
>
> The taxpayer's attachment to Form 12153 states, in summary, that: "1.) the Notices of Deficiency for 1996 and 1997 are facially void; 2.) there was a failure to generate an assessment list for the assessments for 1996 and 1997; 3.) there was a failure of the Commissioner to certify and transmit the assessment list for

the 1996 and 1997 assessments; 4.) there was a failure to record the assessments for the 1996 and 1997 assessments; 5.) there was a failure to provide record of assessment for the 1996 and 1997 assessments; and 6.) there was a failure to send Notices of Assessment for the 1996 and 1997 tax assessments."

After multiple telephone contacts, and an in-office recorded conference, the taxpayer voluntarily entered into an Installment Agreement for $130.00/month payable on the 26th of each month.  The taxpayer has made his first installment payment and has also paid the one-time user fee of $43.00.  Placement of the taxpayer's account into installment agreement status will prevent enforced collection action from occurring; therefore, the issued Notice of Intent to Levy has become moot. The taxpayer is aware that a Notice of Federal Tax Lien may be filed if the agreement defaults, and is also aware that interest will continue to accrue until the balances due are paid in full.

BRIEF BACKGROUND OF COLLECTION DUE PROCESS HEARING

On October 21, 2003, a conference letter was issued to the taxpayer scheduling the conference requested for November 13, 2003, at 1:30 p.m.  This letter presented the taxpayer with an overview of how the liability arose, and also defined for the taxpayer the scope of the actual Collection Due Process conference.

The taxpayer responded via phone and mail correspondence that the conference would need to be rescheduled for a later time.  The taxpayer is legally blind and needed the additional time to make preparations for a conference--to include orchestrating travel accommodations and having someone read him all correspondence.

On 11/13/2003 and again on 11/20/2003, detailed phone conferences were held with the taxpayer.  Appeals learned the taxpayer's position appeared to be that even though he acknowledged signing the Decision document (as referenced in detail above), he was never advised how that would translate in terms of actual assessment amount.

Appeals explained the Collection Process for the taxpayer.  Streamline Installment Agreement criteria were explained to the taxpayer in detail.  He qualifies for

an installment agreement for $130.00/month, payable on the 26th of each month.  The taxpayer understands that interest will continue to accrue on the balances owed until the amounts are paid in full.  The taxpayer also understands that a Notice of Federal Tax Lien may be filed if the agreement defaults.  The taxpayer verbally agreed to these terms, and was provided Form 433D, Installment Agreement for review.  However, the tax-payer still desired an in-office conference to be recorded via court stenographer.

An in-office conference, audio taped by Appeals, as well as recorded via court stenographer, was held on December 18, 2003 at 10:30 a.m.  At this conference, the taxpayer supplied the signed Form 433D, Installment Agreement, agreeing to the terms as detailed above.  He also provided his first installment payment as well as the one-time user fee of $43.00.  He was provided with the opportunity to raise any and all other issues of concern to him.  Again, the underlying liability issue was raised, and the IRS' position, as stipulated in the Decision document from Hudspath v. Commissioner (U.S. Tax Court Docket No. 7901-00), was reiterated to the taxpayer.

The taxpayer again acknowledged receiving IRS worksheets, but did not realize that he could have disputed the amounts as determined by the IRS.  The taxpayer was advised during the Appeals conference that if he possessed substantive information that would change the actual amounts of the computations (i.e. proof of a math error made on the part of the IRS, etc.), that he could potentially pursue a request for abatement.  Mr. Hudspath advised he possessed no such information.  He does not believe there should be any assessments at all.

The taxpayer advised that he would be petitioning Tax Court to challenge the underlying liability even fur-ther.  However, he would not be raising the issue of achieving a collection alternative, because he is in agreement with the terms of his signed Form 433D.

BRIEF BACKGROUND OF ASSESSMENT

The outstanding liabilities for 1996 and 1997 are the result of TEFRA flow-through adjustments from two TEFRA entities:  WINN [sic] ENTERPRISES, LC., and STEPHENS

CITY CHIROPRACTIC, PLC.  In a Decision document from Hudspath v. Commissioner (US Tax Court, Docket No. 7901-00), agreed to and signed by both the taxpayer, and the IRS, entered April 26, 2002 into the US Tax Court record, the following items were stipulated:

1.) Petitioner reported certain items on his 1996 and 1997 income tax returns related on his investment in WIN Enterprises, LC and Stephens City Chiropractic, PLC.

2.) WIN Enterprises, LC and Stephens City Chiropractic, PLC are partnerships which are subject to the unified audit and litigation procedures set forth in I.R.C. §§6221 et seq (the TEFRA partnership procedures).

3.) For purposes of computing the overpayment in this case, petitioner's partnership items relating to WIN Enterprise, LC and Stephens City [Chiropractic], PLC have been treated as if they were correctly reported on petitioner's income tax returns for the 1996 and 1997 taxable years and they have not been adjusted as part of this docketed proceeding.

4.) The tax treatment of petitioner's partnership items relating to WIN Enterprise, LC and Stephens City [Chiropractic], PLC will be resolved in a separate partnership proceeding conducted in accordance with the TEFRA partnership procedures.

5.) The adjustments necessary to apply the results of the TEFRA partnership proceeding described in subparagraph 4 to petitioner, shall be treated as computational adjustments under I.R.C. § 6231(a)(6) and assessed, credited or refunded accordingly.

6.) To the extent that the computation of petitioner's tax liability which properly reflects the tax treatment of the partnership items relating to WIN Enterprise, LC and Stephens City Chiropractic, PLC, as determined in the TEFRA partnership proceeding described in subparagraph 4, would also result in a change in petitioner's tax liabil-

> ity attributable to nonpartnership items, as previously determined in this docketed proceeding, such change may be treated as a computational adjustment under I.R.C. §§ 6231(a)(6) and assessed, credited or refunded accordingly.
>
> (Hudspath v. Commissioner, US Tax Court Docket No. 7901-00)

Accordingly, in June of 2002, the IRS proceeded with computational adjustments as referenced above. Mr. Hudspath was issued copies of IRS' computations, and ultimately, Mr. Hudspath was issued the Notice of Intent to Levy, upon which he requested the Collection Due Process Hearing.

## DISCUSSION AND ANALYSIS

### Applicable Law and Administrative Procedures

* * * The Letter 1058, Notice of Intent to Levy and Notice of your Right to a Hearing, was mailed certified, return receipt requested on April 19, 2003, to the taxpayer's last known address.

   *      *      *      *      *      *      *

* * * The taxpayer was provided the opportunity to raise any relevant issue at the hearing.

This Settlement Officer has had no prior involvement with respect to these tax liabilities.

### Relevant Issues Raised by the Taxpayer

All issues raised by the taxpayer have been discussed above. Per IRC 6330(c)(2)(B), underlying liability challenges may only be raised if the person did not receive any statutory notice of deficiency OR did not otherwise have an opportunity to dispute such tax liability. Appeals determined that a challenge to the underlying liability could not be raised here under the forum of this Collection Due Process request. * * * [Mr. Hudspath] had previous opportunities to dispute the tax liability in this case.

Balancing Efficient Collection and Intrusiveness

IRC 6330 requires that the Appeals Office consider whether any collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.  The file indicates that the legal and procedural requirements pursuant to the issuance of the Final Notice, Notice of Intent to Levy, were met and were not improper.

As stated, placement of the taxpayer's account into Installment Agreement status will prevent enforced action from occurring.  Therefore, the issued Notice of Intent to Levy will become moot.  Should the agreement default, the IRS will issue CP523, Notice of Defaulted Installment Agreement, which will detail potential enforcement actions that may be taken against the taxpayer.

## Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  We conclude that there are no genuine issues of material fact regarding the questions raised in respondent's motion.

In his response to respondent's motion (petitioner's response), petitioner frames the issue presented in the instant case as follows:

> Whether the misrepresentations by Respondent's counsel of the terms of the settlement agreement in Hudspath v. Commissioner, Docket No. 7901-00 should render the settlement agreement void and thus, preclude any lien or levy action for assessments arising therefrom?

Petitioner takes the following position in petitioner's response:

This Court should not only deny Respondent's Motion for Summary Judgment, but this Court should also grant the Petitioner summary judgment. There is no genuine issue with regard to the misrepresentations concerning the stipulated settlement in Hudspath v. Commissioner, Docket No. 7901-00. * * *

\* \* \* \* \* \* \*

Under the circumstances, there is only one recourse open to this Court for these material misrepresentations. * * * Declare that the stipulated settlement in Hudspath v. Commissioner, Docket No. 7901-00 is void and thus, the assessments arising therefrom are unenforceable.

Respondent counters that the Court should reject the position of petitioner in petitioner's response. We agree.

We note initially that the instant case does not involve assessments arising from petitioner's non-TEFRA case at docket No. 7901-00. Nor does the instant case involve assessments arising from petitioner's affected items proceeding (petitioner's TEFRA-related case at docket No. 14741-02). See supra note 6. The instant case involves only assessments for petitioner's taxable years 1996 and 1997 that are attributable to flowthrough computational adjustments, as defined in section 6231(a)(6), resulting from the respective SCC-FPAA and WIN-FPAA, which FPAAs had been the subject of the partnership-level proceeding (the TEFRA case at docket No. 7982-00) that the Court dismissed for lack of jurisdiction on April 2, 2001. See secs. 6223, 6225(a)(2), 6226(h), 6229, 6230(a)(1), 6231(a)(6); see also Brookes v. Commissioner, 108 T.C. 1, 5 (1997).

In petitioner's affected items proceeding (petitioner's TEFRA-related case at docket No. 14741-02), petitioner took a position that is virtually the same as the position that he is taking in the instant case. In petitioner's affected items proceeding, the Court summarized petitioner's position as follows:

> respondent's determinations relating to this affected items proceeding should not be sustained because respondent informed petitioner that, pursuant to the April 24, 2002, stipulation [in petitioner's non-TEFRA case at docket No. 7901-00], petitioner would have an opportunity to challenge the partnership items. In support of his contention, petitioner, who is blind, asserts that he justifiably relied on respondent to explain the terms of the stipulation.

Hudspath v. Commissioner, T.C. Memo. 2004-75.

The Court rejected petitioner's position in petitioner's affected items proceeding. In so doing, the Court concluded:

> Petitioner's credible testimony and the plain language of the stipulation (i.e., "The tax treatment of petitioner's partnership items * * * will be resolved in a separate partnership proceeding". (Emphasis added.)) established that respondent misled petitioner. These facts, however, do not override the mandate of section 6221 that "the tax treatment of any partnership item * * * shall be determined at the partnership level." Maxwell v. Commissioner, 87 T.C. 783, 787-788 (1986).
>
> Respondent complied with the partnership audit and litigation procedures and, upon completion of the partnership-level proceeding, assessed a computational adjustment against petitioner. See secs. 6223, 6225(a)(2), 6230(a)(1), 6231(a)(6); Brookes v. Commissioner, 108 T.C. 1, 5 (1997). Petitioner had the opportunity, in the partnership-level proceeding [the TEFRA case at docket No. 7982-00], to challenge the partnership items, but he failed to do so. Accord-

> ingly, petitioner is precluded from challenging those items in this [petitioner's affected items] proceeding [petitioner's TEFRA-related case at docket No. 14741-02]. See secs. 6221, 6226; Brookes v. Commissioner, supra at 5-7.

Id.

For the same reasons on which we relied in rejecting petitioner's position in petitioner's affected items proceeding, id., we reject petitioner's position in the instant case. On the record before us, we find that petitioner may not challenge the existence or the amount of petitioner's respective unpaid liabilities for 1996 and 1997. See sec. 6330(c)(2)(B).

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination of the Commissioner for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in determining in the notice of determination that, as long as petitioner is in compliance with the installment agreement into which he voluntarily entered with respect to petitioner's respective unpaid liabilities for 1996 and 1997, the notice of intent to levy is moot. On that record, we shall grant respondent's motion.

We have considered all of petitioner's statements, conten-

tions, and arguments in petitioner's response and in the petition in this case that are not discussed herein, and we find them to be without merit, irrelevant, frivolous, and/or groundless.[7]

To reflect the foregoing,

An appropriate order granting respondent's motion and decision will be entered for respondent.

---

[7]In addition to petitioner's position in petitioner's response that respondent misled him with respect to certain terms of the parties' stipulation in petitioner's non-TEFRA case at docket No. 7901-00, petitioner advanced in the petition in the instant case certain contentions and arguments that the Court finds to be frivolous and/or groundless.