# United States Tax Court

T.C. Memo. 2022-79

TREVOR R. PETTENNUDE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 636-21L.                              Filed July 18, 2022.

————

*Ulises Pizano-Diaz*, for petitioner.

*Daniel J. Bryant* and *Brian A. Pfeifer*, for respondent.

## MEMORANDUM OPINION

BUCH, *Judge*: This collection case is pending before the Court on the Commissioner's Motion for Summary Judgment. Trevor Pettennude seeks review of the Commissioner's determination to proceed with collection of his unpaid 2009 and 2011 federal income tax liabilities by levy. The assessments at issue arose from Tax Court decisions disallowing a partnership's section 45 credits.[1] The issues for decision are (1) whether Mr. Pettennude may challenge his underlying liabilities, and if so, whether he is liable for additional tax as a partner of Ecotec Coal, LLC (Ecotec), and (2) whether the Commissioner abused his discretion in sustaining collection action. Because Mr. Pettennude had a prior opportunity to challenge his underlying liabilities, he may not challenge them in this proceeding; and because Mr. Pettennude never

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*2] sought or suggested any collection alternatives, the Commissioner did not abuse his discretion in sustaining the collection action.

*Background*[2]

Mr. Pettennude, an entrepreneur who works primarily in the mortgage and banking industries, invested in Ecotec. Ecotec is a Florida limited liability company that is treated as a partnership for federal income tax purposes. In 2006, Ecotec claimed $118,554,804 in section 45 credits on the basis of its participation in the refined coal industry. It carried most of the credits forward to later years and then solicited capital contributions from new members in exchange for coal credits. In 2009, Mr. Pettennude invested on the premise that he would receive credits that he could claim on his individual federal income tax returns. Documents in the Commissioner's administrative record showed that Mr. Pettennude was one of more than 100 partners in Ecotec, and his interest in Ecotec's profits was less than one percent.

The Commissioner examined Ecotec's partnership returns for 2008 through 2011. Because Ecotec had more than 10 partners, the Commissioner followed the partnership unified audit and litigation procedures under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, codified at sections 6221 through 6234 and repealed for returns filed for partnership tax years beginning after December 31, 2017. The Commissioner issued Ecotec's tax matters partner (TMP) notices of Final Partnership Administrative Adjustment (FPAAs) for 2008 through 2011, disallowing Ecotec's claimed coal credits. The Commissioner did not send copies of the FPAAs to Mr. Pettennude. The TMP filed Tax Court petitions for 2008 through 2010 at Docket No. 25961-13 and for 2011 at Docket No. 28181-15. In 2017, the Tax Court entered stipulated decisions pursuant to Rule 248(a) wherein the parties agreed that Ecotec was not entitled to the claimed credits for 2008 through 2011. In those decisions, the TMP certified that no party objected to entry of the decisions.

As a result of the Tax Court decisions in Ecotec's partnership-level cases, the Commissioner adjusted Mr. Pettennude's individual income tax liabilities. The Commissioner sent Mr. Pettennude a notice of computational adjustment for 2009 and for 2010 through 2011. The

---

[2] These facts are derived from the administrative record underlying the collection proceeding, except where otherwise noted.

[*3] notices informed him that he owed additional tax of $812,885 and $27,289 for 2009 and 2011, respectively. The notice did not show any additional liability for 2010.

After Mr. Pettennude failed to pay the liabilities shown in the notices, the Commissioner began collection efforts. The Commissioner mailed Mr. Pettennude a notice of intent to levy for 2009 and 2011. In response, Mr. Pettennude requested a hearing using Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the form he indicated that he was challenging his underlying liabilities and did not propose any collection alternatives. In a letter to the Commissioner, his attorney argued that Mr. Pettennude was denied due process because he "never received a CP321N Notice under [section] 6212(a)" allowing him to appeal the adjustment in Tax Court. The Commissioner assigned the case to a settlement officer in the IRS Independent Office of Appeals. The settlement officer conducted a hearing with Mr. Pettennude's attorney, who challenged only the underlying liabilities. Although the settlement officer provided extra time to discuss collection alternatives, Mr. Pettennude never provided the documents required for considering collection alternatives.

The settlement officer determined that collection action was appropriate. She determined that the underlying liabilities resulted from Ecotec's TEFRA proceedings. She visited the Tax Court's website and confirmed that the 2009 and 2011 tax periods were addressed in Ecotec's Tax Court cases. She also secured examination workpapers and contacted revenue agents within the IRS's Examination Division to understand why Mr. Pettennude might not have received personal notice of the FPAAs that led to those cases (and eventually the adjustments he disputes). The revenue agent confirmed that the FPAAs were appropriately issued at the partnership level. The settlement officer also placed the following documents in the administrative record: (1) a notice of computational adjustment for 2009; (2) a notice of computational adjustment for 2011; (3) a 2011 Schedule K–1, Partner's Share of Income, Deductions, Credits, etc., on which Ecotec identified Mr. Pettennude as a partner; (4) transcripts for multiple years; and (5) Mr. Pettennude's 2011 return, on which he claimed a $27,289 credit for "[r]enewable electricity, refined coal, and Indian coal production." On the basis of this evidence, the settlement officer determined that Mr. Pettennude was precluded from challenging his underlying liabilities because he was a party to Ecotec's TEFRA proceedings. Accordingly, the Commissioner mailed a notice of determination sustaining the proposed levy.

**[\*4]**    Mr. Pettennude petitioned the Tax Court. He resided in Denver, Colorado, when he timely filed his Petition. In the Petition, Mr. Pettennude challenged only his underlying liabilities.

*Discussion*

Before the Court is the Commissioner's Motion for Summary Judgment, which Mr. Pettennude opposes. Mr. Pettennude seeks to challenge his underlying liabilities, which flow from adjustments made to items reported on partnership returns for a partnership in which Mr. Pettennude was treated as a partner. The resolution of this case requires that we consider the intersection of collection proceedings and the partnership unified audit and litigation procedures enacted as part of TEFRA. The Commissioner argues that summary judgment is appropriate because there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Specifically, the Commissioner argues that Mr. Pettennude's underlying liabilities are not properly at issue in this collection case because he had a prior opportunity to challenge them.

Mr. Pettennude opposes the motion and argues that his underlying liabilities are properly before the Court. Mr. Pettennude bases his challenge to the underlying liabilities on his claim that he was not an Ecotec partner in 2009 and 2011 and thus he should not be liable for adjustments that flowed through to him from Ecotec. He argues that whether he was a partner is a dispute of material fact such that summary judgment is inappropriate.

Whether Mr. Pettennude was a partner in Ecotec is determinative of his liabilities; thus his challenge to his status as a partner is tantamount to a challenge to his underlying liabilities. But as discussed below, Mr. Pettennude's underlying liabilities are not properly before us.

I.    *Summary Judgment Standard*

We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule

**[\*5]** 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. *Id*. In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. We make factual inferences in the light most favorable to Mr. Pettennude, the nonmoving party.

II.   *Standard of Review*

When the taxpayer's underlying liability is properly at issue, we determine the liability de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000). Where the underlying liability is not properly at issue, we review the Commissioner's collection determination for abuse of discretion. *Id*. Whether the underlying liability may be raised in a collection proceeding turns on whether the taxpayer received a notice of deficiency or otherwise had a prior opportunity to dispute the liability. *See* § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e) and (f); *see also Davison v. Commissioner*, T.C. Memo. 2019-26, at \*12–13, *aff'd*, 805 F. App'x 259 (5th Cir. 2020). Both before the Commissioner and in his Petition, Mr. Pettennude challenges only his underlying liabilities.

III.   *Underlying Liabilities*

The first issue is whether Mr. Pettennude may dispute his underlying liabilities. There is no dispute that he did not receive a notice of deficiency for the 2009 and 2011 liabilities that the Commissioner seeks to collect. Therefore, the question before us is whether he otherwise had a prior opportunity to dispute his liabilities. The Commissioner argues that Mr. Pettennude had a prior opportunity because (1) the Commissioner issued FPAAs to Ecotec's TMP for 2009 and 2011 and (2) when the TMP petitioned the Tax Court, Mr. Pettennude was considered to be a partner in Ecotec and was treated as a party to the proceedings. Mr. Pettennude argues that the FPAAs were not a prior opportunity because he did not receive notice of them; and he further alleges that he was unaware of any administrative or court proceedings before he received the notices of computational adjustments.

Generally, the issuance of an FPAA at the conclusion of a TEFRA examination provides an opportunity for a partner to challenge the Commissioner's determinations. *Davison*, T.C. Memo. 2019-26, at \*12–13; *see Hudspath v. Commissioner*, T.C. Memo. 2005-83, 89

**[*6]** T.C.M. (CCH) 1051, 1057, *aff'd*, 177 F. App'x 326 (4th Cir. 2006). The Commissioner must issue various notices regarding partnership proceedings, including FPAAs, to a partnership's TMP. §§ 6223(a), 6231(a)(7). Regarding the requisite notice to other partners, special rules apply to partnerships with more than 100 partners, such as Ecotec. *See* § 6223(b)(1). A partner who has a less than one-percent interest in such a partnership's profits is sometimes referred to as a "non-notice partner" because such partners generally are not entitled to receive notice directly from the Commissioner. § 6223(b)(1). And unlike the TMP, they cannot file a petition to challenge an FPAA. § 6226(b); *Energy Res., Ltd. v. Commissioner*, 91 T.C. 913, 916 (1988). Mr. Pettennude was not entitled to direct notice because he had a less than one-percent profits interest in Ecotec, which had more than 100 partners.

The issuance of an FPAA to the TMP constitutes adequate notice to non-notice partners. We have held that the TEFRA provisions denying direct notice to non-notice partners do not violate due process because the "[TMP], who receives notice and has the right to petition the Tax Court to reconsider the FPAA, acts as the agent for the other partners." *Blonien v. Commissioner*, 118 T.C. 541, 553 (2002), *supplemented by* T.C. Memo. 2003-308. For example, section 6223(g) requires the TMP to keep partners informed of partnership-level proceedings, which includes notifying each partner of FPAAs, proposed stipulated decisions, and settlement agreements. A partner who does not wish to be bound by the TMP may move to participate in the proceeding. § 6226(c)(2); Rule 245(b). However, Mr. Pettennude argues that he lacked notice of any partnership proceedings. We infer, in the light most favorable to him, that the TMP failed to inform him of the partnership proceedings. However, the TMP's failure to notify a partner of partnership proceedings or send a partner copies of an FPAA does not affect the applicability of adjustments to such a partner. *See* § 6230(f); *Kimball v. Commissioner*, T.C. Memo. 2008-78, 95 T.C.M. (CCH) 1306, 1308; *Vander Heide v. Commissioner*, T.C. Memo. 1996-74, 71 T.C.M. (CCH) 2151, 2153. In *Vander Heide*, an adjustment flowed through to married taxpayers—non-notice partners—following a partnership-level settlement. *Vander Heide*, 71 T.C.M. (CCH) at 2152. The taxpayers argued they lacked notice, but we held they were bound by the settlement notwithstanding any TMP notification failures. *Id.* at 2152–53. We emphasized that the taxpayers were "not victims" of the Commissioner or the Code but of "unscrupulous purveyors of tax shelters who, having sold [them] scam investments . . . , failed to follow procedures and disappeared with the funds." *Id.* at 2153.

**[\*7]**     Similarly, Mr. Pettennude is bound by the partnership item determinations set forth in the decisions entered in Ecotec's Tax Court cases. When a TMP files a petition for readjustment of partnership items, he does so in a representative capacity as to all partners, who are treated as parties to the Tax Court proceeding. § 6226(c). They are bound by the partnership item determinations resulting from that proceeding. § 6223(g). Partnership items include the partnership aggregate and each partner's distributive share of income, gain, loss, deduction, or credit, and the items necessary to determine a partner's percentage interest in the partnership. § 6231(a)(3); Treas. Reg. § 301.6231(a)(3)-1(a)(1), (4). To the extent that a taxpayer's claim that he is not a partner would affect the distributive shares of the other partners, as is the case here, the question of whether he is a partner is a partnership item. *Blonien*, 118 T.C. at 551–52. Mr. Pettennude never moved to participate in Ecotec's Tax Court proceedings, where he could have appropriately challenged whether he was a partner. As a result, he was treated as a party to those proceedings and is bound by their outcomes. Further, the TMP entered decisions under Rule 248(a), which provides that when a TMP executes a stipulation consenting to the entry of decision and files it with the Tax Court, it binds all parties. The TMP's signature constitutes a certification that no party objects, and the decisions in the cases to which Mr. Pettennude was a party explicitly stipulate that no party objected.

The Commissioner's issuing FPAAs to Ecotec's TMP provided a prior opportunity to Mr. Pettennude. Because the TMP was his agent, the Commissioner's notifying the TMP was sufficient for due process purposes, even if the TMP never forwarded the FPAAs to him. And when the TMP commenced Tax Court proceedings, Mr. Pettennude was a party to those proceedings, and the decisions entered in those proceedings bound him. As a result, he is precluded from challenging his underlying liabilities.

IV.     *Abuse of Discretion*

Because Mr. Pettennude's underlying liabilities are not at issue, our review of the notice of determination is for abuse of discretion. *See Sego*, 114 T.C. at 610. An abuse of discretion occurs if the settlement officer exercises her discretion "arbitrarily, capriciously, or without sound basis in fact or law." *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). To answer the question of whether the settlement officer abused her discretion, we consider whether she (1) properly verified that the Commissioner met all requirements of applicable law and

[*8] administrative procedure, (2) considered any relevant issues petitioner raised, and (3) considered whether the proposed collection action is no more intrusive than necessary. *See* § 6330(c).

Because Mr. Pettennude only challenged the underlying liabilities and did not raise collection alternatives, our review here will primarily focus on the first criterion—the verification requirement. *See Cavazos v. Commissioner*, T.C. Memo. 2008-257, 96 T.C.M. (CCH) 341, 343–44 ("It is not an abuse of discretion . . . to sustain a levy and not consider any collection alternatives when the taxpayer has proposed none."). As part of the collection review process, settlement officers must verify whether an assessment was properly made for each tax and period listed on the collection notice (here, 2009 and 2011). *See Ron Lykins, Inc. v. Commissioner*, 133 T.C. 87, 97 (2009); *Dinino v. Commissioner*, T.C. Memo 2009-284, 98 T.C.M. (CCH) 559, 564.

In considering whether the settlement officer satisfied the verification requirement in Mr. Pettennude's case, the issue is *not* whether Mr. Pettennude is in fact a partner who is liable for the adjustments, but whether the settlement officer abused her discretion in finding the assessment was valid. The settlement officer concluded that the assessments were valid by determining that they were based on Ecotec's TEFRA proceedings. The settlement officer verified that the record contained a notice of computational adjustment for 2009 and 2011. From that, the settlement officer reasonably concluded that all requirements of applicable law and administrative procedure were followed. Because the settlement officer's finding was supported by the administrative record, she did not abuse her discretion in verifying the validity of the assessments and determining that collection action was appropriate.

V.    *Conclusion*

In this collection case, Mr. Pettennude challenged his underlying liabilities for 2009 and 2011. He had a prior opportunity to dispute those liabilities: The Commissioner issued FPAAs to Ecotec's TMP; the TMP filed Tax Court petitions from those FPAAs; Mr. Pettennude was a party to those proceedings; and he could have elected to participate in those proceedings. Thus, his underlying liabilities are not properly at issue in this collection proceeding, and he is precluded from challenging them. § 6330(c)(2)(B); Treas. Reg. § 301.6330-1(e)(3), (f). The settlement officer verified that applicable law and administrative procedure had been followed in making the assessments. Thus, we will grant the

**[\*9]** Commissioner's Motion for Summary Judgment. *See Lewis v. Commissioner*, 128 T.C. 48, 61–62 (2007).

No genuine dispute of material fact exists in this collection action, and we will enter a decision for the Commissioner as a matter of law. To reflect the foregoing,

*An appropriate order and decision will be entered.*