133 T.C. No. 5

UNITED STATES TAX COURT

RON LYKINS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10034-07L.               Filed September 2, 2009.

        P filed a corporate tax return for 2001 reporting
a net operating loss (NOL).  P then requested tentative
refunds for 1999 and 2000 from the NOL carryback into
those years, pursuant to I.R.C. sec. 6411.  The IRS
allowed those refunds in December 2002.  In February
2003 R issued to P a statutory notice of deficiency for
1999 and 2000 that made no adjustment related to, nor
any mention of, the NOL carryback or the refunds.  P
filed a timely petition with respect to that notice of
deficiency.  During the deficiency case, the IRS Office
of Appeals considered P's NOL carrybacks and determined
not to allow them.  R's attorneys were aware that R
intended to recapture the tentative refunds but did not
amend the answer to assert additional deficiencies.
The case was tried in February 2005, with neither party
putting on evidence as to the NOL carrybacks, and
decision was eventually entered in P's favor on March
3, 2006.  However, on March 8, 2005, while the
deficiency case had been awaiting decision, R summarily
assessed the amounts of the tentative refunds pursuant

to I.R.C. sec. 6213(b)(3). R then gave notice of his intent to levy in order to recapture the tentative refunds. P requested a collection due process (CDP) hearing; and following P's hearing, on April 10, 2007, R issued a notice of determination to proceed with collection. In his CDP hearing and this case, P did not attempt to prove the merits of the 2001 NOL but rather contends that, under the doctrine of res judicata, the March 3, 2006, decision in the original deficiency case bars R from contending that P owes more tax for 1999 and 2000. R contends that he properly assessed the taxes against P pursuant to I.R.C. sec. 6213(b)(3) and that because P allowed the Court to render a final decision in a prior deficiency case without considering the merits of the NOL claim, P should be barred by res judicata from raising the issue in this proceeding.

Held: Res judicata does not bar P from claiming NOL carrybacks to 1999 and 2000, despite the prior deficiency case involving those years, because the statutory scheme for NOL carrybacks includes I.R.C. sec. 6511(d)(2)(B)(i), which allows a refund attributable to an NOL carryback notwithstanding "the operation of any * * * rule of law", including res judicata.

Held, further, res judicata does not bar R from recapturing P's tentative refunds for 1999 and 2000, despite the prior deficiency case involving those years, because of the statutory scheme for NOL carrybacks, in which tentative refunds under I.R.C. sec. 6411 are granted summarily and are excepted by I.R.C. secs. 6212(c)(1) and 6213(b)(3) from normal restrictions on assessment.

Ronald G. Lykins (an officer), for petitioner.

Terry Serena, for respondent.

OPINION

GUSTAFSON, Judge:  This case is an appeal by petitioner Ron Lykins, Inc. (RLI), under section 6330(d).[1]  RLI seeks our review of the determination by the Internal Revenue Service (IRS) to uphold a proposed levy on RLI's assets.  The levy is intended to recapture income tax refunds for tax years 1999 and 2000 which the IRS tentatively allowed as a result of RLI's claimed net operating loss (NOL) carryback from 2001 but later concluded was improper.  This case is submitted to the Court fully stipulated under Rule 122.

The parties' primary contentions focus on the doctrine of res judicata.  Therefore, the dispositive issue is whether RLI's favorable decision in a prior deficiency case--Ron Lykins, Inc. v. Commissioner, T.C. Memo. 2006-35--either bars RLI from disputing, or bars the IRS from collecting, the liability now asserted.  We hold that res judicata neither bars RLI from asserting the NOL carryback nor bars the IRS from recapturing the tentative refunds allowed on account of the NOL carryback.

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (Code) (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The facts are derived from the parties' stipulations of March 18, 2008 (as amended January 5, 2009), and those stipulations are incorporated herein by this reference.

RLI is currently an S corporation, see sec. 1361, though in the tax years at issue--1999 and 2000--it was a C corporation, see secs. 301 et seq. RLI's principal place of business was in Ohio at the time the petition was filed.

### Activity Before Litigation

For the years 1999 and 2000, RLI filed its Forms 1120, U.S. Corporation Income Tax Return, reporting taxable income and a tax liability for each year that was satisfied by quarterly estimated tax payments. For the year 2001, however, RLI filed a Form 1120 reporting a net operating loss (NOL) of about $135,000. RLI filed that 2001 Form 1120 in June 2002; and on November 5, 2002, it filed a Form 1139, Corporation Application for Tentative Refund, in order to carry that 2001 loss back to the years 1999 and 2000 (pursuant to section 172), reduce its tax liability for those earlier years, and obtain the resulting refunds. In this instance, the IRS made the tentative refunds very promptly on December 16, 2002, allowing $24,113 for 1999 and $6,337 for 2000.

However, while the IRS personnel responsible for the tentative refunds had been processing RLI's Form 1139, IRS examination personnel were examining RLI's returns for 1999 and

2000.  On February 6, 2003--less than 2 months after RLI had received tentative refunds for 1999 and 2000--the IRS issued to RLI, for those very same years, a statutory notice of deficiency (pursuant to section 6212), determining that RLI owed more tax than it had originally reported and paid for those years.  The notice of deficiency did not make any reference to the NOL carrybacks from 2001, nor did it take into account the recent refunds in its computation of RLI's liability.  Rather, the notice made unrelated adjustments that are not at issue.

The Prior Deficiency Case, Docket No. 6795-03

RLI filed a timely petition in this Court on May 6, 2003, which commenced docket No. 6795-03.  The petition stated in part, in paragraph 4:

> I disagree with the deficiency for the following reasons: * * * 4) Form 1139 to claim an NOL deduction of $135,748 was filed on, or about, November 5, 2002, for the years 1999 and 2000.

Thus, although RLI had already received the 1999 and 2000 refunds resulting from the 2001 NOL carryback, RLI initially believed that the 2001 NOL was relevant to its 1999-2000 deficiency case. Thereafter, at least as early as March 1, 2004, respondent requested that RLI "substantiate the deductions on the 2001 return" so as to verify RLI's entitlement to the NOL carryback to 1999 and 2000, the years in the deficiency case. Respondent's litigating attorneys were aware of the dispute about the tentative refunds allowing the NOL carryback.  In March 2004 the

Court granted a continuance upon the parties' joint representation that they "currently are not able to stipulate the amount of any loss in taxable year 2001 to which the petitioner is entitled." By letter dated August 4, 2004, an Appeals officer offered RLI a conference at which the IRS Office of Appeals would consider "the allowance of the net operating loss deduction (NOLD) carryback to 1999 and 2000." Thereafter correspondence was exchanged between RLI and the Office of Appeals on the subject of the NOL.[2]

In pretrial activity throughout 2004, the parties explicitly disputed whether the NOL was properly included in the deficiency case, with RLI eventually contending that it was not in the case and respondent contending that it was in the case. By December 2004, the Appeals officer who was considering the matter determined that the 2001 NOL should be disallowed. However, respondent did not amend the answer or assert an increased deficiency to take account of this development.

---

[2]In addition to the August 4, 2004, letter from Appeals Officer Jones to RLI stating that Appeals was considering the validity of the NOL, the correspondence regarding the NOL included a November 2, 2004, letter from RLI to Appeals Officer Jones where in RLI provided Appeals with some substantiation for the NOL; a November 8, 2004, letter from Appeals Officer Jones to RLI requesting more substantiation from RLI; and a December 7, 2004, letter from RLI to Appeals Officer Jones where in RLI stated its refusal to provide any further documentation to substantiate the NOL.

Rather, on January 18, 2005, RLI moved for leave to file an amendment to its petition[3] in docket No. 6795-03. The motion explained that the reference in the original petition to the carryback of the 2001 NOL "was inadvertent and unnecessary as to why the Petitioner disagreed with the Notice of Deficiency", and it requested that the "petition be amended to strike (eliminate) the statement from the petition". The attachment to the motion restated the original petition verbatim, except that it omitted the original reference to the NOL (i.e., in paragraph 4, the subparagraph "4) Form 1139 to claim an NOL deduction of $135,748 was filed on, or about, November 5, 2002, for the years 1999 and 2000") by excluding subparagraph "4)" of the original petition in its entirety. RLI's motion was granted on January 24, 2005, and its amendment to paragraph 4 of the petition was filed.

On February 1, 2005, the parties and the Court held a telephone pretrial conference in which respondent's counsel stated respondent's position that res judicata would thereafter bar RLI from litigating the NOL, and RLI stated its position that there would have to be another trial on the NOL issue. As respondent's brief explains, the Court did not decide the res

---

[3]The motion, filed by RLI pro se, was styled "Motion for Leave to File Amended Answer", and it asked the Court to file an attached "Amended Answer" (because it was "in answer to the Notice of Deficiency"); but the relief the motion requested pertained to the petition, not the answer. The Court filed it as a "Motion for Leave", granted the motion, and filed the "Amended Answer" as a "Reply".

judicata issue but made "sure that petitioner understood the respondent's position." RLI's understanding was that its amendment had "eliminate[d] the NOL" from consideration in the deficiency case.

Notwithstanding the amendment that had been made to the petition, respondent did not move to amend the answer.[4] As a result, respondent's answer remained silent as to the 2001 NOL and its having been carried back to 1999 and 2000, the tax years at issue in the deficiency case. Respondent never alleged in the answer (and never moved to amend the answer to allege) that, as a result of the refunds, the deficiencies were greater than had been determined in the notice of deficiency. Nor did respondent ever ask the Court to hold that the tentative carryback was excepted from the effect of the Court's decision.[5]

---

[4]But see IRS Field Service Advisory (May 9, 1997) (warning IRS attorneys that "the Service may not be able to collect a summarily assessed deficiency once the Tax Court redetermines unrelated deficiencies").

[5]Cf. Nestle Holdings, Inc. v. Commissioner, T.C. Memo. 2000-374 (the parties stipulated that "the decision of the Court would not serve as res judicata" as to tentative carryback refunds); 1 Restatement Judgments 2d, sec. 26(1) (1982) ("When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action"); IRS Field Service Advisory (July 14, 1997) ("The decision and computation should specify which carrybacks
(continued...)

On February 17, 2005, at the one-day trial of RLI's deficiency case (docket No. 6795-03), neither party put on any evidence as to the 2001 NOL or the carrybacks to 1999 and 2000. After the trial concluded, the case remained pending and awaiting decision for slightly more than a year. The Court then issued an opinion--Ron Lykins, Inc. v. Commissioner, T.C. Memo. 2006-35--in RLI's favor and, on March 3, 2006, entered decision "that there is no deficiency in tax due from petitioner for its 1999 and 2000 tax years." Neither party appealed the decision and, pursuant to sections 7481 and 7483, it became final on June 1, 2006.

The Summary Assessment

On March 8, 2005--i.e., two and a half weeks after the trial for years 1999 and 2000 in docket No. 6795-03 but a year before the Court's entry of its decision--the IRS made summary assessments against RLI for 1999 and 2000, pursuant to section 6213(b)(3), in the amounts of the December 2002 refunds. By this means, the IRS sought to recapture those refunds. The IRS then issued to RLI Notices of Tax Due for 1999 and 2000.

---

[5](...continued)
were not at issue in the Tax Court proceeding. It should also provide that if those carrybacks are placed at issue in a later proceeding, petitioner will not assert the defense of res judicata or contest the ability of the Commissioner to make an assessment under I.R.C. § 6213(b)(3)").

The CDP Proceedings

RLI did not pay the amounts that the IRS demanded, and on October 8, 2005, the IRS issued to RLI, pursuant to section 6330(a), a Final Notice of Intent to Levy and Notice of Your Right to a Hearing regarding the unpaid taxes for 1999 and 2000.[6] On October 26, 2005, RLI timely submitted a request for a collection due process (CDP) hearing by way of a letter substitute for Form 12153, Request for a Collection Due Process Hearing. At its CDP hearing, RLI made three arguments against the proposed levy:

First, RLI argued that the summary assessment and the levy were the result of bad faith and the desire for revenge on the part of the IRS. The hearing officer dismissed RLI's allegation of a bad-faith or revenge assessment after reviewing the case file. According to the attachment to the notice of determination, "the administrative case file * * * show[s] that Appeals first began considering the NOL issue as early as 10/27/2003 * * *. The meeting between [IRS attorney]

---

[6]The record contains only the first page of the final notice of intent to levy issued to RLI on October 8, 2005. While this page does not contain the amount of unpaid tax as required by section 6330(a)(3), it indicates that the amount due is "shown on the back of [the] page." Furthermore, RLI has never asserted that the amounts due were not provided and in a letter dated October 26, 2005, submitted in response to the notice of intent to levy, RLI clearly lists the amounts due for 1999 and 2000. Therefore, we are satisfied that a proper Final Notice of Intent to Levy and Notice of Your Right to a Hearing was issued to RLI for 1999 and 2000.

Mr. Neubeck, Mr. Lykins and Appeals Officer Jones took place well *after* this." Moreover, the hearing officer did not find RLI's allegation against Mr. Neubeck, even if true, "to be materially relevant to the tax issues in [RLI's] case."

Second, RLI proposed to dispute its underlying liabilities for the 1999 and 2000 tax by showing that it was entitled to the carryback of its 2001 NOL to 1999 and 2000. RLI did not undertake to prove that it actually realized a loss in 2001; rather, RLI argued that it was entitled to the carrybacks because (i) the IRS had accepted without dispute RLI's return for 2001 showing the NOL and had issued the refunds resulting from the carryback of that NOL, and (ii) the period of limitations for assessments for 2001 had expired, so that the IRS could make no further adjustments to 2001. The Office of Appeals declined to consider RLI's challenge to the underlying liabilities for 1999 and 2000 because it concluded that in 2004 RLI had had a prior "opportunity", see sec. 6330(c)(2)(B), for Appeals's consideration of the issue when the deficiency case had still been pending.

Third--and most significant here--after the Tax Court's decision in docket No. 6795-03 was entered on March 3, 2006, RLI raised in the CDP hearing (by letters of March 8 and September 11, 2006) the then-"new issue" that the IRS should not proceed with the levy because the Tax Court's decision "that

there is no deficiency in tax due from the petitioner for its
1999 or 2000 tax years" barred the IRS from asserting any other
liabilities for those years.

On April 10, 2007, the Office of Appeals rejected RLI's
arguments and issued a Notice of Determination Concerning
Collection Action(s) Under Section 6320 and/or 6330, determining
that the IRS could proceed with levy to recapture the refunds
issued to RLI for 1999 and 2000.

The Petition in This Case

On May 7, 2007, RLI timely petitioned this Court to review
that notice of determination.  RLI's petition raised five issues:

> 1.  The statute of limitation had expired for 2001 and
> IRS had not issued an Intent to Levy (IRC § 6330(a)(1)
> and 26 C.F.R. § 301.6330-1(a)(1)[)].  Thus, the NOL
> carryback to 1999 and 2000 are correct mathematical
> calculations and the tax assessments of 3/8/05 were not
> legal or valid.
>
> 2.  A valid statutory Notice of Deficiency, or 90-day
> letter, was not issued for these tax assessments, or
> denial of NOL.
>
> 3.  The additional tax assessments were pursued solely
> under a bad-faith revenge motive of IRS Counsel * * *.
>
> 4.  On 3/3/06 a US Tax Court Decision (No. 6795-03):
> was entered ". . . that there is no deficiency in tax
> due from petitioner for its 1999 or 2000 tax years."
> Thus, the doctrine Res Judicata applies, and the 1999,
> and 2000 tax years are closed to further IRS
> challenges.
>
> 5.  IRS was not authorized, in this case, to make
> changes to the taxpayer's account (IRC § 6213(g)(2.)[)]

RLI has abandoned the first and third of these five issues.[7]  The second and fifth issues--that no statutory notice of deficiency was issued for the reassessments or for the disallowance of the NOL, and that the reassessments are invalid because they do not correct mathematical errors as defined in section 6213(g)(2)--are addressed in part II.B below as "verification" issues under section 6330(c)(1).  The fourth of these issues--res judicata--is the principal issue in the case, discussed below in part III. (It should be noted that the petition does not state, and RLI has not undertaken in this case to prove affirmatively, that it actually incurred in 2001 a loss that it was entitled to carry back to 1999 and 2000.  Rather, RLI's contentions are to the effect that the IRS is procedurally barred from denying the carrybacks.)

The parties stipulated the facts and submitted the case for decision without a trial under Rule 122.

---

[7]The Rule 122 stipulation does not include facts to support these contentions--the statute of limitations argument and the bad-faith/revenge argument--and RLI failed to present or argue these matters on brief.  As a result, we find these arguments to have been abandoned in this litigation.  See Rule 149(b); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988); Cerone v. Commissioner, 87 T.C. 1, 2 n.1 (1986); Rockwell Intl. Corp. v. Commissioner, 77 T.C. 780, 837 (1981), affd. 694 F.2d 60 (3d Cir. 1982).

## Discussion

I.  Collection Due Process Principles

A.  CDP Procedures

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.  However, Congress has added to chapter 64 of the Internal Revenue Code certain provisions (in subchapter D, part I) as "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy:  Before proceeding, the IRS must issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before the Office of Appeals.  Sec. 6330(a) and (b)(1).

B.  Issues Considered

At that so-called CDP hearing, the taxpayer may raise issues relevant to the proposed collection of tax:  Pursuant to section 6330(c)(2)(A) a taxpayer may raise collection issues (including collection alternatives, such as offers-in-compromise), but RLI did not raise such issues.  Pursuant to section 6330(c)(2)(B) a taxpayer may, under certain circumstances, challenge the underlying tax liability.  In this instance, by asserting that res judicata bars the IRS's collection of the tax at issue, RLI raised a "challenge[] to the existence * * * of the underlying tax liability", which it could

do if previously it "did not * * * have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

From the information presented at that CDP hearing, the Appeals officer must make a determination whether the proposed levy action may proceed.  The Appeals officer is required to take into consideration: (1) "verification from the Secretary that the requirements of any applicable law and administrative procedure have been met", see sec. 6330(c)(3)(A) (citing sec. 6330(c)(1)); (2) relevant issues raised by the taxpayer, see sec. 6330(c)(3)(B) (citing sec. 6330(c)(2)); and (3) "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary", see sec. 6330(c)(3)(C).

If the Office of Appeals then issues a notice of determination to proceed with the proposed levy, the taxpayer may appeal the determination to this Court within 30 days, as RLI has done, and we now "have jurisdiction with respect to such matter". Sec. 6330(d)(1).

C.    Standard of Review

Respondent does not dispute RLI's right to contend in the CDP hearing and in this case that res judicata bars collection of the tentative refunds.  We assume that this contention is a

challenge to underlying liability under section 6330(c)(2)(B);[8] and we assume that this liability challenge is permitted because res judicata arising from the Tax Court's prior decision could not have been raised as an issue before that decision was entered in March 2006, so that RLI did not have a prior opportunity to assert this issue.[9] Where the underlying tax liability is properly at issue in a section 6330 hearing, the Court will review the matter not for abuse of discretion but de novo, Davis v. Commissioner, 115 T.C. 35, 39 (2000), so we review de novo RLI's res judicata contention. However, the facts are fully stipulated, and if the Appeals officer was in error, it was an error of law, so the sometimes vexing standard- and scope-of-review issues do not affect the outcome here.

---

[8]When a taxpayer alleges that the IRS is barred from collecting his Federal income tax, e.g., because of the expiration of the period of limitations on collection, we review that matter as a challenge to the underlying liability. See Boyd v. Commissioner, 117 T.C. 127, 130 (2001).

[9]RLI's right under section 6330(c)(2)(B) to challenge its underlying liability on the grounds of res judicata, which RLI never had a prior opportunity to assert before Appeals, is distinct from RLI's right (or lack of right) to challenge its underlying liability on the merits (i.e., by proving the 2001 NOL and its carrybacks to 1999 and 2000), which issue RLI did have a prior opportunity to raise before Appeals. See infra p. 41.

II.  Verification Under Section 6330(c)(1)

    A.    The Verification Obtained by the Office of Appeals

    In March 2005 the IRS summarily assessed each tentative refund amount "as if it were due to a mathematical or clerical error", as permitted by section 6213(b)(3).  For an assessment made pursuant to section 6213(b)(3), the IRS is not required to issue a notice of deficiency before making the assessment.  Sec. 6213(b)(1).  As a result, the legal and procedural requirements that the Appeals officer was required to verify under section 6330(c)(1) were (i) that a valid assessment was made, (ii) that notice and demand was issued, (iii) that the liability was not paid, and (iv) that the Final Notice of Intent to Levy and Notice of Your Right to a Hearing was issued to the taxpayer.  These requirements were recited in the attachment to the notice of determination, and the hearing officer concluded that "[t]hese requirements have been met."  The record contains transcripts showing these administrative actions and copies of the notice and demand for 1999 and 2000, as well as the final notice of intent to levy.

    B.    RLI's Verification Disputes

    However, RLI disputes the validity of the March 2005 summary assessment on two grounds: (1) failure to issue notices of deficiency, and (2) the absence of a mathematical error.  Although RLI raised neither of these arguments in its CDP

hearing, a challenge to the verification requirement of section 6330(c)(1) is properly before the Court "without regard to whether the taxpayer raised * * * [any verification issues] at the Appeals hearing." Hoyle v. Commissioner, 131 T.C. ___, ___ (2008) (slip op. at 11). Therefore, any argument in RLI's petition asserting infirmities with the notice of deficiency or the assessment procedure are section 6330(c)(1) verification issues that RLI may raise here for the first time.

### 1. Lack of a Notice of Deficiency

RLI's petition asserts: "2. A valid statutory Notice of Deficiency, or 90-day letter, was not issued for these tax assessments, or denial of NOL." It is well settled that the IRS has three remedies to recover an "abatement, credit, refund, or other payment" erroneously allowed under section 6411: (i) to summarily assess the deficiency attributable to the tentative carryback adjustment as if due to a mathematical error; (ii) to institute an erroneous refund suit under section 7405; or (iii) to issue a notice of deficiency under section 6212.[10] Baldwin v. Commissioner, 97 T.C. 704, 710 (1991) (and cases cited

---

[10]However, pursuant to Rev. Rul. 88-88, 1988-2 C.B. 354, 355, the "Service may not mail a second notice of deficiency to the taxpayer with respect to the amount attributable to disallowance of the carryback [where] * * * a notice of deficiency for amounts unrelated to the carryback had previously been mailed and the taxpayer had petitioned the Tax Court for a redetermination of that deficiency." See also Midland Mortgage Co. v. Commissioner, 73 T.C. 902 (1980).

threat). Furthermore, none of these remedies is exclusive, so that the IRS may freely choose which remedy to pursue. Id.; sec. 301.6213-1(b)(2)(ii), Proced. & Admin. Regs. (26 C.F.R.).

In RLI's case the IRS chose, pursuant to section 6213(b)(3), to summarily assess the deficiency attributable to the tentative carryback adjustment as if the deficiencies were due to a mathematical error. Since the IRS opted to pursue that remedy, there was no requirement that the IRS issue a notice of deficiency with respect to the assessments. Sec. 301.6213-1(b)(2)(i), Proced. & Admin. Regs. ("the district director or the director of the regional service center may assess such amount without regard to whether the taxpayer has been mailed a prior notice of deficiency"). In fact, in order to make summary assessment under section 6213(b)(3), the IRS needed only to "notify the taxpayer that such assessment has been or will be made." Sec. 301.6213-1(b)(2)(i), Proced. & Admin. Regs. The IRS did so by issuing to RLI notices of tax due for 1999 and 2000 on March 8, 2005, which showed the reassessed amounts.

RLI argues, however, that the notices failed to include any explanatory information as to the basis for the IRS's actions as is required by section 6213(b)(1). However, that section requires that "[e]ach notice under this paragraph shall set forth the error alleged and an explanation thereof." The assessment in this case was made not under section 6213(b)(1) but under section

6213(b)(3), which does not require such an explanation. See

Midland Mortgage Co. v. United States, 576 F. Supp. 101, 106

(W.D. Okla. 1983) ("This Court does not find that * * * [section]

6213(b)(3) requires that the taxpayer be notified of the error

alleged and be given an explanation thereof as required by * * *

[section] 6213(b)(1)").

With respect to RLI's complaint that no notice of deficiency

was issued for the disallowance of the NOL in the loss year

itself, RLI is correct that, as far as our record shows, the IRS

never formally disallowed the NOL in 2001 or issued any notice of

deficiency for 2001 in that regard. While it may not be

intuitive to some taxpayers, the IRS does have the authority to

disallow an NOL carryback in a year to which the NOL was carried

back without issuing any notice of adjustment for the year in

which the NOL was generated. It is well settled that the IRS and

the courts may recompute taxable income from one year--even a

closed year--in order to determine tax liability in another year.

See sec. 6214(b); Barenholtz v. United States, 784 F.2d 375, 380-

381 (Fed. Cir. 1986); Springfield St. Ry. Co. v. United States,

160 Ct. Cl. 111, 312 F.2d 754, 757-759 (1963); Robarts v.

Commissioner, 103 T.C. 72, 78 (1994), affd. without published

opinion 56 F.3d 1390 (11th Cir. 1995); Angell v. Commissioner,

T.C. Memo. 1986-528, affd. without published opinion 861 F.2d 723

(7th Cir. 1988). As a result, RLI's argument that the IRS erred

in some manner by not issuing a notice of deficiency for 2001 with respect to the NOL has no merit.

### 2.    Absence of a Mathematical Error

RLI's petition also asserts:  "5.  IRS was not authorized, in this case, to make changes to the taxpayer's account (IRC § 6213(g)(2.)[)]"  That is, RLI argues that there must be a mathematical error, as defined in section 6213(g)(2), in order for the IRS to assess taxes under section 6213(b)(3) to recover refunds tentatively allowed under section 6411.  However, this argument ignores the actual language of the statute.  Section 6213(b)(3) provides that assessments for refunds that are tentatively allowed under section 6411 may be made "as if * * * [the amount] were due to a mathematical or clerical error appearing on the return." (Emphasis added.)  Nowhere does section 6213(b)(3) provide that there must be an actual mathematical or clerical error, as defined in subsection (g), before the IRS may assess taxes to recover a section 6411 tentatively allowed refund.  As a result, subsection (g), which defines "mathematical or clerical error", has no impact on subsection (b)(3).

We find no defect in the verification by the Office of Appeals, under section 6330(c)(1), that the IRS had met the requirements of applicable law and administrative procedure.  We therefore turn to the principal question in this case, i.e.,

whether the prior deficiency case forecloses either party from its contentions about the NOL carrybacks.

III. <u>Res Judicata and Collateral Estoppel</u>

    A.    <u>Res Judicata Precludes Relitigation of "claims"; and Collateral Estoppel Precludes Relitigation of "issues"</u>.

Res judicata and the related doctrine of collateral estoppel "have the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation." <u>Meier v. Commissioner</u>, 91 T.C. 273, 282 (1988). Res judicata, or claim preclusion, was developed by the courts to bar repetitious suits on the same cause of action and is applicable to tax litigation. As the Supreme Court explained:

> [W]hen a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every <u>matter which was offered</u> and received to sustain or defeat the claim or demand, but as to <u>any other admissible matter which might have been offered</u> for that purpose." * * *
>
>     *     *     *     *     *     *     *
>
> * * * Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year. * * *

<u>Commissioner v. Sunnen</u>, 333 U.S. 591, 597-598 (1948) (quoting <u>Cromwell v. County of Sac</u>, 94 U.S. 351, 352 (1876) (emphasis added)). That is, each tax year is a separate cause of action,

and res judicata makes a final judgment on that cause of action truly final. Where the cause of action of a taxpayer's liability in a given tax year has been litigated (as RLI's tax liabilities for 1999 and 2000 were litigated in docket No. 6795-03), the parties are thereafter barred from relitigating that liability-- whether by reference either to a "matter which was offered" in that prior suit (such as the adjustments on the notice of deficiency) or to a "matter which might have been offered" in the prior suit--unless there is an applicable exception that prevents the application of the doctrine of res judicata.

Collateral estoppel, or issue preclusion, prevents the relitigation of an identical issue, even in connection with a different claim or cause of action. Unlike res judicata, which binds the parties as to any matter that "might have been offered", whether or not that matter was actually litigated, collateral estoppel applies only to issues that were actually litigated in the first suit. The rule of collateral estoppel provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." 1 Restatement, Judgments 2d, sec. 27 (1982) (emphasis added); see also Montana v. United States, 440 U.S. 147, 153-154 (1979). Simply stated,

> Under res judicata, a final judgment on the merits of
> an action precludes the parties or their privies from
> relitigating issues that were or could have been raised
> in that action.  * * *  Under collateral estoppel, once
> a court has decided an issue of fact or law necessary
> to its judgment, that decision may preclude
> relitigation of the issue in a suit on a different
> cause of action * * *.

Allen v. McCurry, 449 U.S. 90, 94 (1980).

B.   Collateral Estoppel Does Not Apply Here.

Respondent briefly invokes the doctrine of collateral estoppel in support of his position;[11] but the doctrine has no application here.  In arguing against the prior case's decision having any preclusive effect against the collection of the carryback refunds, respondent points out that "the court did not rule on whether the tentative refunds for 1999 and 2000 were proper in the deficiency proceeding".  And respondent is correct in so stating.  The merits of the 2001 NOL were not "actually litigated" in the prior deficiency case for tax years 1999 and 2000.  Because the 2001 NOL was not "actually litigated", neither party would be barred under collateral estoppel from litigating the 2001 NOL in this case.

---

[11]Respondent argues that "petitioner is barred by the doctrines of res judicata and/or collateral estoppel" (emphasis added), but his principal contention appears to be res judicata, presumably because it is clear that the 2001 NOL was not "actually litigated" in the prior case.

C.  Res Judicata Bars Neither Party to This Case.

For the following reasons, we hold that, even assuming that either party could have litigated the NOL in the prior deficiency case, neither RLI nor respondent is now barred by res judicata from disputing the 2001 NOL carryback and its tax effect upon the 1999 and 2000 liabilities.

1.  Deficiency Jurisdiction Extends to "the entire subject matter of the correct tax".

When RLI filed its petition in docket No. 6795-03, the Tax Court acquired jurisdiction, pursuant to section 6213(a), "in respect of the deficiency that is the subject of such petition." In the case of income tax, section 6211(a) provides that--

the term "deficiency" means the amount by which the tax imposed by subtitle A * * * exceeds the excess of--

(1)  the sum of

(A)  the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

(B)  the amounts previously assessed (or collected without assessment) as a deficiency, over--

(2)  the amount of rebates, as defined in subsection (b)(2), made.  [Emphasis added.]

That is, the equation for calculating a deficiency begins with "the tax imposed", i.e., the taxpayer's actual liability.  It follows, then, that once a petition is properly filed, the Tax Court has jurisdiction to adjudicate not only the particular

adjustments in the statutory notice of deficiency but also both

the IRS's claim of a greater deficiency than is stated in the

notice, see sec. 6214(a), and the taxpayer's claim of an

overpayment of tax, see sec. 6512(b)(1).  Moreover, the Code is

explicit that the Tax Court's authority to redetermine a

deficiency in one year allows it to address NOL carrybacks from

another year--i.e., to "consider such facts * * * for other years

* * * as may be necessary correctly to determine the amount of

such deficiency".  Sec. 6214(b).  Tax Court precedent is clear

that "[w]e acquire jurisdiction when a taxpayer files with the

Court and that jurisdiction extends to the entire subject matter

of the correct tax for the taxable year", Naftel v. Commissioner,

85 T.C. 527, 533 (1985) (emphasis added),[12] and other courts hold

the same.[13]  The res (Latin for "thing") that is judicata

---

[12]See also Cornick v. Commissioner, T.C. Memo. 1985-513
("Judicial economy requires that all issues raised in a case be
tried and settled in one proceeding; this has long been our
policy.  Cf. Estate of Baumgardner v. Commissioner, 85 T.C. [445]
(filed Sept. 11, 1985) [estate tax]; Markwardt v. Commissioner,
64 T.C. 989, 998 (1975) (where we denied taxpayer's request for a
second trial when he attempted to raise a new issue not raised at
the first trial); Robin Haft Trust v. Commissioner, 62 T.C. 145,
147 (1974) * * *.  When we are presented with a case over which
we have jurisdiction and in which we possess the necessary and
usual powers to resolve the dispute, we must consider all the
issues raised by the case.  See Kluger v. Commissioner, 83 T.C.
309, 314 (1984)"); Powerstein v. Commissioner, 99 T.C. 466, 472-
473 (1992); Rosenberg v. Commissioner, T.C. Memo. 1985-514.

[13]See Russell v. United States, 592 F.2d 1069, 1072 (9th
Cir. 1979) ("There can be no question that when the taxpayer
petitioned the Tax Court to redetermine the asserted deficiency,
(continued...)

("adjudicated") in a deficiency case is the taxpayer's entire tax liability for each year in issue.  Once the Tax Court's decision has become final, the thing has been adjudicated.  Res judicata.

> 2.    The NOL Carrybacks Could Have Been Litigated in the Prior Deficiency Case.

Respondent could have litigated the 1999 and 2000 carryback refunds in the deficiency case.  The IRS issued the refunds in December 2002 and then 7 weeks later issued a notice of deficiency that failed to take those recent refunds into account.  The IRS was put on notice of this failure in May 2003 when RLI commenced that deficiency case by filing a petition that explicitly mentioned its prior filing of the Form 1139.  The issue of the NOL carryback was a subject of frequent discussion in pretrial proceedings, and respondent's litigators knew before the February 2005 trial of docket No. 6795-03 that respondent wanted to retrieve those refunds.

Section 6214 allows the IRS to assert an additional deficiency at or before the hearing or a rehearing and to allege and demonstrate in the pending suit a deficiency greater than

---

[13](...continued)
the Tax Court acquired jurisdiction to decide the entire gamut of possible issues that controlled the determination of the amount of tax liability for the year in question" (emphasis added)); Erickson v. United States, 159 Ct. Cl. 202, 309 F.2d 760, 767 (1962) ("the Tax Court's jurisdiction, once it attaches, extends to the entire subject of the correct tax for the particular year. The cause of action then before the court encompassed all phases of the taxpayer's income tax for 1942" (emphasis added; fn. ref. omitted)).

that determined in the notice of deficiency.  By amending his answer to plead that the carryback allowance was improper and that the deficiency was therefore greater than the notice had stated,[14] respondent could have brought the additional deficiencies resulting from the carryback refunds into the deficiency case for 1999 and 2000, making them part of the res that was to be judicata there; but he did not do so.

RLI did mention the NOL from 2001 in its petition in docket No. 6795-03, but the Court later granted it leave to amend the petition to delete that reference, and RLI never undertook to prove the NOL or to validate the carrybacks.  Like respondent, we assume[15] that RLI could have pressed in docket No. 6795-03 its position as to its actual tax liabilities in 1999 and 2000--"the tax imposed"--taking into account the asserted NOL carrybacks from 2001 and could have asked the Court to rule on the validity of those carrybacks in redetermining RLI's deficiencies, as defined in section 6211(a), for 1999 and 2000.  But RLI did not do so.

---

[14]Rule 41(a) provides that leave to amend pleadings "shall be given freely when justice so requires."  Cf. Fed. R. Civ. P. 15(a)(2) (to the same effect).

[15]Respondent did not dispute that RLI had the option to bring the NOL carrybacks into docket No. 6795-03 but rather insisted that it had brought them into the case.  Because we hold that RLI is not bound by res judicata in any event, we do not need to resolve the question whether, before summary assessment had been made and paid, there was any impediment to RLI's pleading the carrybacks.

Rather, RLI does seem to have attempted to invoke the IRS's allowance of the refunds as if those refunds estopped the IRS from later reconsidering and disallowing the NOL.[16]  If that was RLI's belief, then it was mistaken.  See secs. 6411, 6213(b)(3). Even a regular refund claimed on Form 1120X, Amended U.S. Corporation Income Tax Return, is subject to the IRS's later contention that it was erroneous, see secs. 6532(b), 7405(b); and the same is certainly true under the "tentative" refund procedure that RLI chose.[17]  A Form 1139 is an "application for a <u>tentative</u> carryback adjustment" (emphasis added) under section 6411(a); and under section 6411(b) the IRS is supposed to make only a "limited examination of the application" and then give the appropriate refund within 90 days.  The system thus sets a deadline for the IRS to rule on these applications, and then gives it the special

---

[16]As respondent put it in his brief:  "The petitioner believed the NOL issue should be removed [from the petition in the deficiency case] * * * because the respondent accepted the petitioner's 2001 corporate income tax return and issued the refunds on December 16, 2002.  The petitioner considered the acceptance of the return and issuance of the refunds as evidence that the respondent had previously, and permanently, allowed the NOL and the carrybacks."

[17]See <u>Zarnow v. Commissioner</u>, 48 T.C. 213, 215 (1967) ("if the respondent allows an adjustment [under section 6411] which he later determines was in error, he may subsequently correct such error").  The difference between the filing of a claim for a tentative refund on Form 1139, see sec. 6411, versus the filing of a formal refund claim on Form 1120X, see secs. 6401-6402, 6501, 7422(a), is explained in the Instructions for Form 1139. See also Saltzman, IRS Procedural Forms and Analysis, pars. 5.06 and 5.10 (2001).

mechanism of the so-called "summary assessment", see secs. 6212(c)(1), 6213(b)(3), to quickly reassess the amount if the refund is later found to have been improper, see Midland Mortgage Co. v. Commissioner, 73 T.C. 902, 909-911 (1980). As a result, the IRS's right hand that examines returns and determines deficiencies may not always know what its left hand that allows tentative refunds is doing; but the agency's compliance with the strict timetable of section 6411 does not estop it from taking subsequent corrective action.

Apparently because of its erroneous belief about the supposed binding effect of the tentative refunds, RLI never undertook in the prior deficiency case to substantiate its 2001 loss and to prove the validity of the carrybacks; and it moved to amend its petition to delete any reference to the NOL. The Court granted that motion, and the parties never litigated the carrybacks in the deficiency case.

We thus assume that either party could have raised the 2001 NOL in the prior case--a circumstance that would implicate res judicata--but we find that, for the following reasons, res judicata does not apply here.

### 3. The NOL Carrybacks Were Not Litigated, but Neither Party Is Bound by Res Judicata.

The doctrine of res judicata does admit exceptions, and we now explain the exception to res judicata that applies in this case. As the Restatement instructs:

When any of the following circumstances exists, the general rule * * * does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

\*      \*      \*      \*      \*      \*      \*

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim * * *.

1 Restatement, supra sec. 26. As we will show, the Internal Revenue Code incorporates a "statutory * * * scheme" for refunds attributable to NOL carrybacks, in sections 6411, 6511(d)(2)(B), 6212(c)(1), and 6213(b)(3); and it is "the sense of the scheme" that both the taxpayer and the IRS are permitted to "split" NOL carrybacks from the rest of a liability.

### a.  RLI Is Not Bound.

Respondent contends, "Because the petitioner permitted the Court to render a final judgment in the deficiency proceeding without considering the merits of the NOL claim, it should be precluded from raising that issue in this proceeding". But assuming RLI could have used its deficiency case to litigate the NOL, the question is whether RLI must have used the deficiency case. The answer is no. The Code includes exceptions to the operation of res judicata,[18] and one of them applies here.

---

[18]For an exception not relevant here, see, e.g., sec. 6015(g)(2) ("(2) Res Judicata-- * * * if a decision of a

(continued...)

Section 6511(d)(2)(B) explicitly permitted RLI to pay the summary assessments and pursue an overpayment remedy for its NOL carrybacks to 1999 and 2000, without the bar of res judicata. Section 6511(d)(2)(A) provides a special period of limitation for claims attributable to an NOL (i.e., a period measured not from the carryback year but from the generating year), and subsection (d)(2)(B) provides:

> (i)  In general.--If the allowance of a credit or refund of an overpayment of tax attributable to a net operating loss carryback * * * is otherwise prevented by the operation of <u>any law or rule of law</u> * * *, such credit or refund may be allowed or made, if claim therefor is filed within the period provided in subparagraph (A) of this paragraph.

> \*       \*       \*       \*       \*       \*       \*

> (iii)  Determination by courts to be conclusive.-- In the case of any such claim for credit or refund or any such application for a tentative carryback adjustment, the determination by any court, including the Tax Court, in any proceeding in which the decision of the court has become final, shall be conclusive <u>except with respect to</u>--

>> (I)  <u>the net operating loss deduction</u> and the effect of such deduction * * *. [Emphasis added.]

That is, under subsection (d)(2)(B)(i) a refund claim attributable to NOL carrybacks may be allowed even if it "is otherwise prevented by the operation of any law [such as the statute of limitations in section 6511(b)] or <u>rule of law</u>"

---

[18](...continued) court in any prior proceeding for the same taxable year has become final, such decision shall be conclusive except" etc.).

(emphasis added)--with the "rule of law" being res judicata.[19] And under subsection (d)(2)(B)(iii) the court determination that would otherwise bar the refund is conclusive "except with respect to" the NOL carryback.

Section 6511(d)(2) relates specifically to a taxpayer's refund claim and not to a taxpayer's prepayment challenge to liability at a CDP hearing under section 6330(c)(2)(B). However, the sense of the Code's scheme is that the NOL carryback contention survives the deficiency case and may be maintained thereafter by the taxpayer, notwithstanding a prior deficiency case. A taxpayer who has paid the tax may claim an overpayment, litigate its carryback in a refund suit, and prove (if it can) that it had a loss in the generating year, that it was entitled to the carryback, and that its tax liability was therefore less than it had paid. If instead that taxpayer is in a CDP case and is otherwise entitled under section 6330(c)(2)(B) to "raise * * * challenges to the existence or amount of the underlying tax liability", res judicata similarly should not operate as a bar.[20]

---

[19]See <u>Mar Monte Corp. v. United States</u>, 503 F.2d 254, 257 (9th Cir. 1974); <u>Birch Ranch & Oil Co. v. Commissioner</u>, a Memorandum Opinion of this Court dated Mar. 24, 1948 (res judicata is a "rule of law" that was intended to be overridden by sec. 322(g), the predecessor statute to sec. 6511(d)(2)(B)(i)); see also <u>Wiltse v. Commissioner</u>, 51 T.C. 632, 633 (1969) ("res judicata is * * * a settled rule of law").

[20]By way of analogy, when the IRS duly mails a statutory notice of deficiency and the taxpayer does not file a petition in
(continued...)

For an Appeals officer to consider only the admitted procedural validity of the summary assessment, and to refuse to consider whether res judicata bars the IRS from collecting that assessment, would deprive the taxpayer of his statutory right to challenge "liability" in the CDP hearing.[21]

Respondent's position essentially ignores the taxpayer prerogative that is embodied in section 6511(d)(2)(B). That statute relieves RLI of the bar of res judicata.

### b.    Respondent Is Not Bound.

Section 6511(d)(2)(B) grants relief to the taxpayer and not to the IRS; but that provision is a part of the statutory scheme that does grant equivalent latitude to the IRS. We have already noted that section 6411 is the part of that scheme that

---

[20](...continued)
the Tax Court to commence a deficiency case, the IRS properly assesses the tax pursuant to section 6213(c). However, if the taxpayer did not actually receive the notice and therefore did not have an opportunity to file a deficiency case, the taxpayer will be entitled to challenge the liability in a CDP case when the IRS attempts to collect the tax. See Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007). In that CDP context, the taxpayer will not be limited to attempting to show that the assessment was procedurally invalid; he is not forced to pay the assessment and make his liability challenge in a later refund suit. Rather, the CDP provisions allow him to make a postassessment, prepayment challenge to liability.

[21]A CDP petitioner is limited to making challenges to liability for which he did not have a prior opportunity. See sec. 6330(c)(2)(B). In part IV below we show that, under this rule, RLI is entitled to press its res judicata claim but is not entitled to attempt to prove the fact of the 2001 loss and the validity of the carrybacks to 1999 and 2000.

effectively requires the IRS to allow tentative refunds from NOL carrybacks after only a cursory examination of the taxpayer's application.  However, the Code includes compensating accommodations to the IRS, in sections 6212(c)(1) and 6213(b)(3):

Section 6212(c)(1) generally bars the IRS from issuing a second notice of deficiency after a taxpayer has filed a petition in the Tax Court in response to a first such notice.[22]  However, the statute explicitly allows the IRS to determine an additional deficiency that results from a tentative carryback refund--even if the IRS has previously issued a notice of deficiency for the carryback year and the taxpayer has filed a petition in the Tax Court.  The statute makes this allowance by including an "except[ion] as provided in * * * section 6213(b)(1) (relating to mathematical or clerical errors)" and then providing (in section 6213(b)(3)) that a tentative carryback refund may be assessed "as if it were due to a mathematical or clerical error".

Thus, these three sections--6411, 6212(c)(1), and 6213(b)-- create a unique regime for the IRS's allowance and recapture of

---

[22]Section 6212(c)(1) provides in pertinent part:  "If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year, * * * except as provided in * * * section 6213(b)(1) (relating to mathematical or clerical errors)".

carryback refunds.  As the legislative history for section 6411 (formerly section 3780) explains:

>    In recognition of the fact that, due to the short period of time allowed [generally 90 days], the Commissioner necessarily will act upon an application for a tentative carry-back adjustment only after a very limited examination, subsection (c) of section 3780 [now section 6213(b)(3)] provides a <u>summary procedure whereby the Commissioner and the taxpayer each may be restored to the same position occupied prior to the approval of such application</u>.  Subsection (c) provides that if the Commissioner determines that the amount applied, credited, or refunded with respect to an application for a tentative carry-back adjustment is in excess of the overassessment properly attributable to the carry-back upon which such application was based, he may assess the amount of the excess as a deficiency as if such deficiency were due to a mathematical error appearing on the face of the return. * * *

H. Rept. 849, 79th Cong., 1st Sess. (1945), 1945 C.B. 566, 583 (emphasis added).  That is, the IRS may determine an additional deficiency (pursuant to section 6212(c)(1)) and may assess it without deficiency procedures as if it arose from a mathematical or clerical error (pursuant to section 6213(b)(3)).

It is this constellation of provisions--sections 6411, 6212(c)(1), and 6213(b)(3), in conjunction with the taxpayer's prerogative enacted in section 6511(d)(2)(B)--that (in the words of the Restatement) constitutes the "statutory * * * scheme" that permits a party to "split his claim".  That is, we do not hold simply that section 6213(b) by itself trumps res judicata, and that the IRS avoids res judicata whenever it is permitted by section 6213(b) to make a summary assessment to correct a

mathematical or clerical error.[23]  Rather, sections 6411,
6212(c)(1), and 6213(b)(3) create a unique procedure for
tentative carryback refunds, and we do not have before us the
question whether there is any analog for this procedure in the
case of these other corrections.  Moreover, unlike the other
summary assessments the IRS may make under section 6213(b), the
summary assessment under subsection (b)(3) to recapture a
tentative refund is not subject to subsection (b)(2), which
(outside the tentative refund context) provides a routine under
which the IRS must abate the assessment upon a taxpayer's request
but then may issue a notice of deficiency, as a prelude to a
probable deficiency case in which the taxpayer will have the
burden of proof.  By excepting carryback recaptures from this
subsection (b)(2) routine,[24] subsection (b)(3) provides that the
NOL carryback recapture will not ordinarily be the subject of a
taxpayer's petition in a deficiency case.

One effect of section 6213(b)(3) bears special mention.  RLI
effectively contends that respondent was required to plead the

---

[23]Section 6213(g)(2) provides, in subparagraphs (A) through
(M), a wide variety of circumstances that constitute
"mathematical or clerical" errors.  In addition, other
circumstances are treated as if they were mathematical or
clerical errors, pursuant to sections 1400S(d)(5)(C),
6034A(c)(3), 6037(c)(3), 6201(a)(3), 6227(c)(1), 6241(b),
6428(f)(1), and 6429(d)(1).

[24]Section 6213(b)(3) provides that "the Secretary * * * may
assess without regard to the provisions of paragraph (2) the
amount of the excess as a deficiency".  (Emphasis added.)

recapture in his answer in docket No. 6795-03 or thereafter be barred by res judicata. However, the means for respondent to do so was to plead the tentative refund as an increased deficiency under section 6214(a). Had he done so, respondent would have borne the burden of proof on the NOL carryback. See Rule 142(a)(1). If instead respondent had denied the application for a tentative refund, prompting RLI to plead in the deficiency case (pursuant to section 6512(b)(1)) the overpayment resulting from the carryback or to file a claim for refund and litigate the claim in a refund suit, then RLI would have had the burden to prove the NOL carryback. If respondent was required to plead the recapture as an increased deficiency, then sections 6411 and 6213(b)(3) would have failed in their congressionally intended purpose to "provide[] a summary procedure whereby the Commissioner and the taxpayer each may be restored to the <u>same position</u> occupied prior to the approval of such application". H. Rept. 849, <u>supra</u>, 1945 C.B. at 583 (emphasis added). If the law were as RLI maintains, then the summary assessment would <u>not</u> restore the IRS to the position it was in before making the tentative refund; rather, the IRS would now be forced to the choice of either bearing an unaccustomed burden of proof or else being bound by res judicata. That was manifestly not Congress's intention, and it is not "the sense of the scheme".

Likewise, we do not hold simply that section 6212(c)(1) by itself trumps res judicata, and that the IRS avoids res judicata whenever it is permitted by section 6212(c)(1) to determine an additional deficiency.  Again, it is the combination of sections 6411, 6212(c)(1), and 6213(b)(3) that creates a unique scheme for tentative carryback refunds.  Section 6212(c)(1) makes exceptions for additional deficiency determinations in five circumstances--i.e.,

> except in the case of fraud, and except as provided in section 6214(a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213(b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861(c) (relating to the making of jeopardy assessments)

--and the recapture of tentative refunds fits into one of those exceptions (i.e., mathematical or clerical errors).  But whether any other additional deficiency determination permitted by section 6212(c)(1) involves an exception to res judicata would turn not just on its appearance in this section but on the overall "sense of the scheme" that the Code does or does not provide for that additional deficiency determination.[25]  Sections

---

[25]The U. S. Court of Appeals for the Eighth Circuit reached the same result that we reach today in Jefferson Smurfit Corp. v. United States, 439 F.3d 448 (8th Cir. 2006), overruling Bradley v. United States, 77 AFTR 2d 96-1255, 96-1 USTC par. 50,195 (D. Minn. 1996), affd. without published opinion 106 F.3d 405 (8th Cir. 1997).  Like the Court of Appeals for the Third Circuit's opinion in Zackim v. Commissioner, 887 F.2d 455 (3d Cir. 1989), revg. 91 T.C. 1001 (1988), Jefferson Smurfit appears to rely on

(continued...)

6411, 6213(b)(3), and 6511(d)(2)(B)--important to our holding here--would have no application to these other determinations allowed by section 6212(c)(1).

For that reason, we need not revisit our holding in Zackim v. Commissioner, 91 T.C. 1001 (1988), revd. 887 F.2d 455 (3d Cir. 1989), which involved the interplay between res judicata and a different exception in section 6212(c)(1)--in that case, the exception "in the case of fraud".  We held in Zackim v. Commissioner, supra at 1010, that in spite of the IRS's ability to issue a second notice of deficiency under section 6212(c)(1), res judicata "precluded [respondent] from litigating, assessing, and collecting" the additional tax for 1979.  The fraud assessment in Zackim and the summary assessment of RLI's tentative refunds have in common their allowance in section 6212(c)(1), but our holding that res judicata does not preclude the IRS's recapture of the tentative refunds depends on statutes that have no application to tax assessments attributable

---

[25](...continued)
broad grounds:  "By excluding fraud from the general bar against successive deficiencies in 26 U.S.C. § 6212(c)(1), 'Congress dealt explicitly with the policy of finality, and plainly excepted claims of fraud from the general policy."  439 F.3d at 453 (quoting Zackim v. Commissioner, supra at 458-459).  We do not decide whether there is a broad exception to res judicata in any circumstance in which additional deficiency determinations are permitted by section 6212(c)(1).  Rather, we decide this case on the narrower basis of the statutory scheme in sections 6411, 6212(c)(1), 6213(b)(3), and 6511(d)(2)(B) that is applicable only to tentative refunds and that excepts the operation of res judicata in that specific circumstance.

to fraud.  For that reason, we have no occasion here to reconsider <u>Zackim</u>, but rather we distinguish it as we did in <u>Burke v. Commissioner</u>, 105 T.C. 41 (1995).  In this case, under a statutory scheme different from the one at issue in <u>Zackim</u>, we find an exception to the doctrine of res judicata, and we hold that the IRS, like the taxpayer, may dispute an NOL carryback after prior deficiency litigation.

IV.  <u>Non-litigation of the Merits of the 2001 NOL</u>

We hold today that RLI is not barred by res judicata from contending that it incurred a net operating loss in 2001 and contending that it is entitled for 1999 and 2000 to NOL carryback deductions.  RLI had hoped to establish that entitlement simply by showing that the IRS was barred by res judicata from disputing the carrybacks.  RLI was entitled under section 6330(c)(2)(B) to make that res judicata challenge at the CDP hearing (and in this appeal therefrom), because it did not have a prior opportunity to press that issue.  However, that challenge lacks merit, and we have upheld the determination by the Office of Appeals that res judicata did not bar the IRS from disputing the NOL.  That holding leaves RLI with the burden of proving its loss in 2001 and establishing the validity of the carrybacks to 1999 and 2000.

The Office of Appeals determined that RLI was not entitled in its CDP hearing to "challenge liability" by proving the NOL carrybacks, because it had had a prior opportunity, during the

pendency of its prior deficiency case, to present to Appeals the issue of its 2001 NOL and the carrybacks to 1999 and 2000. In its petition in this case, RLI did not dispute that aspect of the determination. As a result, if RLI ever had any contention that the Office of Appeals abused its discretion in the CDP hearing by declining to address the actual merits of RLI's 2001 loss, that contention has been conceded, see Rule 331(b)(4), and we do not address it. The merits of the 2001 loss is not an issue that was litigated in this case. The proposed levy to collect the summary assessments must therefore be upheld.

## Conclusion

Although its reasoning on the doctrine of res judicata was in error, the Office of Appeals did not abuse its discretion in determining to proceed with a levy to collect the summary assessments by which it recaptured the 1999 and 2000 NOL carrybacks.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.