T.C. Summary Opinion 2011-24

UNITED STATES TAX COURT

JOHN J. MALONE, SR., AND KAREN R. MALONE, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27815-07S.                 Filed March 8, 2011.

John J. Malone, Sr., and Karen R. Malone, pro se.

Lisa K. Hunter, for respondent.

PARIS, Judge:  This case was heard pursuant to section 7463[1]
of the Internal Revenue Code in effect when the petition was
filed.  Pursuant to section 7463(b), the decision to be entered
is not reviewable by any other court, and this opinion shall

_____

[1]Subsequent section references are to the Internal Revenue
Code of 1986, as amended, unless otherwise indicated.

not be treated as precedent for any other case.  The issues before this Court are:  (1) Whether respondent can proceed with collection of petitioners' 2001 tax liability[2] via lien and levy; (2) whether respondent's assessment with respect to the mischaracterization of petitioners' capital gain as ordinary income and petitioners' omission of the Social Security number needed for a dependency exemption deduction was valid under section 6213; and (3) whether respondent abused his discretion by denying petitioners' request for an abatement of interest for 2001 and 2002[3] under section 6404(e).

The Court holds the following:  (1) Because a portion of the assessment of petitioners' 2001 tax liability (the 2001 assessment) was invalid, respondent cannot proceed to collect the tax attributable to the mathematical error for that tax year via lien or levy; and (2) the Appeals officer did not abuse his discretion in denying petitioners' request for abatement of interest for 2001 and 2002 under section 6404(e).

---

[2]Although petitioners raised in the petition the issue of whether respondent can proceed to collect the 2002 tax liability via lien or levy, this issue is moot.  On May 7, 2007, their 2002 tax liability was satisfied after respondent had applied the credits from 2001 and 2003.

[3]Although petitioners' 2002 tax liability has been satisfied, this Court still has jurisdiction over petitioners' request for an abatement of interest for 2002.  See Greene-Thapedi v. Commissioner, 126 T.C. 1, 12-13 (2006); Bucaro v. Commissioner, T.C. Memo. 2009-247.

## Background

### Petitioners

John J. Malone, Sr. (petitioner husband), and Karen R. Malone (petitioner wife) are husband and wife. Petitioners resided in Nebraska when the petition was filed.

### Tax Returns

Petitioners timely filed two requests to extend the time to file their 2001 joint Federal income tax return (2001 tax return) to August 15, 2002, and then, to October 15, 2002, respectively. Yet they did not file their 2001 tax return until May 19, 2006.

Petitioners also filed a request to extend the time to file their 2002 joint Federal income tax return (2002 tax return) due on April 15, 2003, to August 15, 2003. However, petitioners did not file their 2002 tax return until May 19, 2006, when they filed their 2001 tax return.

Before filing their tax returns petitioners executed Form 2848, Power of Attorney and Declaration of Representative (POA), on January 1, 2006, authorizing their certified public accountant (C.P.A.), Martin D. Hocevar, to receive and inspect confidential tax information and to perform any and all acts that petitioners could perform with respect to any matter relating to the 2001 and 2002 tax returns. Their C.P.A. prepared the returns for those years.

Petitioners reported on their 2001 tax return $69,806 of Federal income tax.  They did not include a payment with this tax return but reported the withholding from their wage income for that year and an estimated payment from a previous tax year. Petitioners reported on their 2002 tax return $13,945 of Federal income tax.  Petitioners did not include a payment with this tax return but reported $6,521 of withholding from their wage income for 2002.

Assessment of Petitioners' 2001 and 2002 Tax Liabilities

On September 11, 2006, the Internal Revenue Service (IRS) recorded the 2001 assessment indicating that petitioners owed $76,179 of Federal income tax, a $15,704.77 late-filing addition to tax, and a $15,856.50 failure to timely pay addition to tax for 2001.  On the same day, the Internal Revenue Service also assessed Federal income tax of $13,945 and additions to tax of $224, $1,670.40, and $1,521.92 for failure to pay estimated tax, failure to timely file, and failure to timely pay tax, respectively, for 2002 (the 2002 tax assessment).

14-Month Period Following Assessment

September 29, 2006, to December 2006:  Request for Abatement

On September 29, 2006, petitioners and their C.P.A. sought advice from the Taxpayer Advocate Service (TAS) concerning abatement of the additions to tax for 2001 and 2002.  TAS advised petitioners to submit a written request for abatement of those

additions to tax for those tax years, and petitioners did so by October 13, 2006.

On October 26, 2006, Revenue Officer Sharon Barber (RO Barber) met with petitioners and orally denied their requests for abatement of the additions to tax for 2001 and 2002. RO Barber gave Publication 1660, Collection Appeal Rights, to petitioners, explained the appeal process, and informed them of their right to appeal her decision by November 30, 2006. Last, RO Barber informed petitioners that if they did not pay their 2001 and 2002 tax liabilities on or before November 30, 2006, a Federal tax lien would be filed for each year.

By letter dated October 30, 2006, RO Barber denied petitioners' requests for abatement of the additions to tax for 2001 and 2002 because petitioners failed to prove reasonable cause for their failure to timely file their tax returns and pay their tax liabilities. Additionally, the letter informed petitioners that they owed Federal income tax and interest of $81,968.23 and $9,401.08 for 2001 and 2002, respectively. Last, RO Barber indicated that a discrepancy existed as to the amount of the tax liability petitioners reported on their original 2001 tax return and the amount the IRS assessed. RO Barber explained further that once she had identified the reason for this discrepancy an explanatory notice would be issued to petitioners

and their representative.  No prior notice or explanation of adjustment had been issued.

On November 3, 2006, petitioners filed Form 1040X, Amended U.S. Individual Income Tax Return (2001 amended return), to amend their 2001 tax return.  On November 6, 2006, RO Barber sent to petitioners the transcript relating to their 2001 assessment.  No notice of deficiency was issued.  The only notice petitioners received relating to their 2001 assessment was Letter 474C dated November 28, 2006, stating "per your request * * * [the IRS has] processed your Amended Return.  There was an error in your figures. * * * [IRS has] adjusted your account."  This letter did not notify petitioners that the amount of tax in excess of that shown on the 2001 tax return was due and such an amount due was computed on the basis of a mathematical or clerical error appearing on the return, did not specify the mathematical or clerical error alleged, and did not render an explanation other than "an error in your figures".  This notice reflected petitioners' taxable income and the tax liability as reported on their 2001 amended return and the IRS' corrected entries thereof.

By November 30, 2006, petitioners did not appeal RO Barber's decision and did not make any payment of their 2001 and 2002 tax liabilities.

On December 1, 2006, petitioners' C.P.A., who held a POA, challenged the 2001 assessment by a faxed letter stating that the

income reported on petitioners' Schedule D, Capital Gains and Losses, was correctly characterized as capital gain, not ordinary income, and should be taxed at a capital gain rate. In addition, petitioners' C.P.A. stated: "also that your [assessed amount of petitioners'] income is $1,160 higher than the tax return. I don't see why that is the case".

By letter dated December 4, 2006, petitioner husband provided the reasons the additions to tax for 2001 and 2002 should be abated but did not appeal RO Barber's decision.

On December 13, 2006, RO Barber issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing to petitioners indicating that Federal tax liens were filed on or about December 13, 2006, to collect the tax liabilities of $96,519.30 and $12,697.23 for 2001 and 2002,[4] respectively. The IRS filed the 2001 and 2002 Federal tax liens on December 19, 2006. By December 30, 2006, petitioners timely submitted a request for a collection due process hearing (CDP hearing) challenging the liens.

---

[4]Before the filing of the lien to collect the entire amount of the 2002 tax liability, most of petitioners' 2002 tax liability had been satisfied when respondent had applied credits from 2001 and 2003. Respondent allocated $4,907.86, $126.08, and $224 on June 12, July 3, and Sept. 11, 2006, respectively, from 2003, and $1.23 on Dec. 8, 2006, from 2001.

January to March 2007:  CDP Hearing and the Appeal of the
Denial of the Abatement

By fax dated January 12, 2007, petitioner husband belatedly
submitted to Revenue Officer Randall Smith (RO Smith), the
collection group manager, an appeal of RO Barber's denial of
their request for abatement of the additions to tax for 2001 and
2002.  By that same fax petitioner husband reminded RO Smith "to
call * * * [him] this week to set an appointment to discuss
* * * [the] matter * * * [they] had spoke about on the telephone
before the New Year", because petitioner husband had "misplaced
* * * [RO Smith's] telephone number, and there * * * [was] no way
to reach * * * [RO Smith] or rediscover it."  Although petitioner
husband and petitioners' C.P.A. scheduled with Mr. Smith a
meeting on an unknown date, that meeting did not occur because
the parties had a miscommunication as to the time.  On January
19, 2007, petitioner husband and petitioners' C.P.A. attended
another meeting scheduled with RO Smith, who left them a message
upon their arrival that he would be late because of a
teleconference with his superior.  After waiting for "50 or 70
minutes" petitioner husband and petitioners' C.P.A. left.  They
immediately sought assistance from Mary Hickey of TAS,
complaining about RO Smith's "cancellation of the meeting" and
"the difficulties * * * [petitioner husband] had reaching RO
Smith either via telephone or in person."  Ms. Hickey was able to
contact RO Smith immediately, and RO Smith assured her that he

would contact petitioner husband and reschedule the appointment. By January 22, 2007, petitioner husband informed TAS that RO Smith did return his call and he would call RO Smith to reschedule the appointment.

Because the Letter 474C did not provide any reasons for the excessive amount of their 2001 assessment, petitioner husband requested further that Ms. Hickey review the adjustments. Ms. Hickey soon determined that the 2001 assessment was made for two reasons: (1) There was a mathematical error based on the omission of the Social Security number required for the dependency exemption deduction; and (2) the IRS incorrectly assumed that an ordinary tax rate applied to a capital gain petitioners reported on their Schedule D. Petitioner husband then asked Ms. Hickey to determine the proper amount of the tax, the additions to tax, and the accumulated interest for that year.

Although petitioners had timely challenged the 2001 assessment under the mathematical error procedure of section 6213 and no notice of deficiency was issued, Officer Gary Herman (RO Herman) proceeded to collect by levy and issued a Final Notice-- Notice of Intent to Levy and Notice of Your Right (notice of levy) on February 15, 2007, indicating that on that date, petitioners had "Unpaid Amount from Prior Notices" of $96,525.30 and $5,273.23 for 2001 and 2002, respectively. The notice of levy also notified petitioners that their additional interest was

$1,406.26 and $313.16 for 2001 and 2002, respectively. On that same day petitioner husband did not attend a scheduled meeting with RO Herman because of flight problems, and the meeting was later rescheduled for February 14, 2007. On February 13, 2007, RO Herman informed TAS that petitioner husband failed to prove reasonable cause that would justify abatement of the additions to tax for 2001 and 2002 and failed to submit a timely appeal.

On February 14, 2007, petitioner husband met with RO Smith and RO Herman with the expectation of appealing RO Barber's denial of the additions to tax abatements for 2001 and 2002. Petitioner husband said that RO Barber "hated him" and was uncooperative. In response RO Smith and RO Herman reiterated their reasons for the denial and served him a summons ordering petitioners to appear and provide financial records on or before March 8, 2007. Petitioner husband believed the meeting was a "scheme" to serve him the summons, and he stated that the IRS had been treating him unfairly. He also challenged the accuracy of the 2001 assessment and requested that the IRS provide an accurate accounting of petitioners' 2001 tax liability. The revenue officers responded that the 2001 assessment was accurate. On February 21, 2007, petitioners timely submitted a Request for a Collection Due Process Hearing to challenge the notice of collection via levy on the basis that "the IRS collection personnel have been wrong about the tax amount due and abusive".

On February 27, 2007, Ms. Hickey informed the revenue officers of her view that respondent's conclusion regarding the amount of petitioners' 2001 assessment was incorrect and the assessment should be reduced.

On March 5, 2007, a TAS case advocate sent an operation assistance request to the IRS functional unit for an adjustment of $5,961 because petitioners' capital gain for the tax year 2001 was mischaracterized as ordinary income and taxed at an improper rate.  That same day petitioner husband sent to TAS a $58,723 payment, and TAS forwarded that payment to the IRS on March 6, 2007, to be applied toward petitioners' 2001 tax liability, leaving unpaid a balance of the remaining assessment and the additions to tax.  By March 6, 2007, the summons was withdrawn, and petitioners' request for a CDP hearing was forwarded to the Office of Appeals.

April to August 2007:  The Office of Appeals

On April 2, 2007, the IRS recharacterized the ordinary income as capital gain for 2001 and abated $5,961 of tax, $1,341.23 of the late-filing addition to tax, $1,490.25 of the late-payment addition to tax, and $2,414 of interest.  A letter of abatement for that tax year was never issued to petitioners or their C.P.A., who held a POA, nor was a notice of deficiency issued after the abatement and reassessment.

Also, in April 2007 petitioners' case was assigned to Settlement Officer Dan Van Grunsven (SO Van Grunsven), who immediately contacted TAS in regard to a face-to-face hearing. On April 30, 2007, TAS informed SO Van Grunsven that petitioners would most likely want a face-to-face conference because they had paid most of the 2001 tax liability on March 6, 2007. That same day SO Van Grunsven emailed RO Herman requesting copies of the correspondence between the revenue officers and petitioners.

By letter dated May 2, 2007, SO Van Grunsven informed petitioners of the issues that would be addressed during the CDP hearing and requested that petitioners call to schedule the hearing. By May 7, 2007, petitioners' 2002 tax liability was satisfied after respondent applied credits from 2001 and 2003. On May 30, 2007, a TAS representative contacted SO Van Grunsven notifying him that petitioner wife was undergoing cancer treatment. SO Van Grunsven responded to a TAS representative that a final response letter would be issued, stating that petitioners had to contact SO Van Grunsven by June 13, 2007. SO Van Grunsven sent the final response letter that day.

On June 4, 2007, petitioner husband called SO Van Grunsven and became upset, stating that he had received "incorrect or slanderous" information from the Omaha collection department. Petitioner husband further informed SO Van Grunsven of petitioner wife's cancer treatment and TAS' assurance of no "further action

taken by Mr. Van Grunsven". SO Van Grunsven informed petitioner husband that TAS never advised or made a request to defer the CDP hearing, so he allowed petitioner husband to reschedule the hearing.

On July 11, 2007, petitioner husband called SO Van Grunsven to raise the issue of the abatement of the additions to tax for 2001 and 2002, complained how the Omaha collection department had taken actions to ruin his life, and requested that Ms. Hickey be the sole TAS employee on the conference call. Pursuant to this conversation, petitioner husband and SO Van Grunsven decided that the CDP hearing would be conducted by telephone. However, petitioner husband never scheduled the conference call. By email dated July 18, 2007, a TAS representative informed SO Van Grunsven that a CDP hearing should be scheduled for July 25, 2007. Petitioners failed to attend that meeting. On July 26, 2007, a TAS representative informed SO Van Grunsven that petitioner husband had taken pain medicine, causing him to oversleep and therefore miss the July 25, 2007, meeting. The CDP hearing was rescheduled for August 16, 2007.

At the hearing SO Van Grunsven allowed petitioners to appeal the denial of the abatement of the additions to tax for 2001 and 2002, even though it was not properly in issue, with the hearing on the abatement denial to be conducted separately from the CDP hearing. Petitioners also asserted that the revenue officers

failed to provide the accurate amount of their 2001 tax liability and therefore petitioners had to obtain the amount from TAS. During the hearing petitioners for the first time requested an abatement of interest for 2001 and 2002. Petitioners complained that the amount of tax due the revenue officers provided for 2001 was overstated by $8,000. Petitioners also requested that the liens to collect the 2001 and 2002 tax liabilities be withdrawn to allow petitioners to obtain a loan to pay the balance. Petitioners added that they were facing economic hardship because they did not have health insurance to defray the medical costs incurred from petitioner wife's cancer treatment and therefore had used most of their funds to pay those bills. Consequently, SO Van Grunsven informed petitioners that he would decide only the issues relating to the liens and levies used to collect the 2001 and 2002 tax liabilities and the abatement of interest for those tax years.

On August 27, 2007, Appeals Officer David L. Torrison (AO Torrison) conducted a telephone hearing concerning petitioners' second request for abatement of the additions to tax for 2001 and 2002. AO Torrison issued a determination sustaining the denial of that abatement. AO Torrison reasoned that petitioners failed to prove reasonable cause for their failure to timely file their tax returns and pay their tax liabilities that would justify abatement.

Notices of Determination

Two notices of determination (notices) were issued on November 6, 2007. The notices stated that the 2002 tax liability had been satisfied and the IRS would not proceed to collect such a liability via lien or levy. The first notice stated that respondent would not withdraw the lien filed to collect the 2001 tax liability because all applicable laws and administrative procedure were followed and the filing of the lien was not premature. According to the first notice, petitioners could not raise the underlying liability as an issue. That notice further stated that petitioners failed to pay the tax due for the tax year 2001 after receiving other notices demanding payment of the 2001 tax liability in a timely manner. According to that notice, the abatement of interest for 2001 and 2002 was denied because the interest was primarily attributable to petitioners' failure to address the liabilities and not due to any unreasonable delays or errors attributable to an IRS officer in performing either a managerial or ministerial act. The second notice stated that respondent could collect by levy the tax petitioners owed for the tax year 2001 and that all applicable laws and administrative procedures had been satisfied.

Tax Court Petition

On December 3, 2007, petitioners timely filed a petition with this Court, stating:

> We are entitled to 100% relief from the claims by
> the IRS. * * * Specifically, IRS personnel refused
> to afford us proper administrative appeals not
> only in the additions to tax process, for which
> this unjust debt is claimed by the IRS, but failed
> to give due consideration to the way we as earners
> and therefore taxpayers make our living.

## Discussion

### I. Appeals Officer's Determinations To Proceed With the Collection of Petitioners' Tax Liability by Lien and Levy

#### A. Collection Principles and Procedure

In 1998 Congress enacted sections 6320 and 6330 to protect certain taxpayer rights and to ensure that the IRS uniformly follows those prescribed procedures. See S. Rept. 105-174, at 67, 73 (1998), 1998-3 C.B. 537, 603, 609. Section 6320 affords taxpayers the right to a fair hearing upon the filing of a notice of lien while section 6330 provides the same right when a notice of levy has been issued. This Court has jurisdiction under section 6330(d)(1) to review the Appeals officer's determinations.

A lien arises after a taxpayer's tax liability has been properly assessed and a notice and demand has been made. Sec. 6321. A taxpayer must request a CDP hearing within the statutorily prescribed period. Sec. 6320(a)(3), (b)(1). The IRS can also issue a notice to collect the tax owed by levy after the tax liability has been properly assessed and a notice and demand has been made. Section 6330(c) governs the CDP hearing where a taxpayer disputes the notice of a filing of a lien and the notice

of intent to collect tax by levy.  Pursuant to section 6330(c)(1), the Appeals officer must verify whether the requirements of the applicable law or administrative procedure have been met.

B. Verification Under Section 6330(c)(1)

This Court has authority to review an issue relating to the verification requirement of section 6330(c)(1) regardless of whether a taxpayer raised that issue at the CDP hearing.  See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008); Marlow v. Commissioner, T.C. Memo. 2010-113.  When a dispute pertains to an error of law, as it does here, the abuse of discretion standard should be applied.  See Freije v. Commissioner, 125 T.C. 14, 36 (2005); Marlow v. Commissioner, supra.  For the reasons set forth below, this Court holds that the Appeals officer's determination to proceed with collection of petitioners' 2001 tax liability via a lien and levy was an error of law and thus, an abuse of discretion.

1. Applicable Law

Section 6501(a) generally provides that a valid assessment of income tax liability may not be made more than 3 years after the later of the date the tax return was filed or the due date of the tax return.  However, section 6213 provides that for an assessment of a deficiency to be valid a notice of deficiency must first be mailed to a taxpayer at his last known address once

the Secretary determines a deficiency in respect of the tax owed. See also Hoyle v. Commissioner, supra at 205.  Section 6211(a) defines a deficiency as the amount by which the correct tax imposed under the Code exceeds the amount of tax shown on the return plus the amount of tax previously assessed less any rebates.  Once a notice of deficiency is issued and a taxpayer timely files a petition with this Court, the Tax Court has jurisdiction over the redetermination of the deficiency.  Sec. 6213(a).

Where an assessment arises from a mathematical or clerical error appearing on the return, no notice of deficiency is required under section 6213(b).  However, with an exception not relevant here, a notice of mathematical error generally should be issued notifying the taxpayer that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error.  That notice must set forth the error alleged and an explanation thereof.  Sec. 6213(b)(1); see also Ron Lykins, Inc. v. Commissioner, 133 T.C. 87, 98 (2009).  Section 6213(b)(1) must be read in conjunction with section 6213(g)(2), which specifies different types of mathematical errors, including an incorrect use of any table the IRS provides with respect to any

return if such incorrect use is apparent from the existence of other information on the return, or an omission of a correct tax identification number as required under section 151 for a personal exemption deduction.  Under section 6213(b) this notice of mathematical error is not considered a notice of deficiency, and therefore a taxpayer who receives such a notice cannot file a petition with the Tax Court.  Nonetheless, within 60 days after a taxpayer is sent a mathematical error notice the taxpayer may request an abatement of the tax liability attributable to the mathematical error and the Secretary shall abate the assessment. Sec. 6213(b)(2).  A reassessment of the tax with respect to the abatement shall be subject to the deficiency procedure.  Id.  No levy or proceeding for the collection of such an assessment shall be made, begun, or prosecuted during the period in which the assessment may be abated.  Sec. 6213(b)(2)(B).  If a petition is timely filed, the Tax Court has jurisdiction over the redetermination of that deficiency arising from that reassessment.  Sec. 6213(b)(2)(A).

2. Parties' Contentions

Petitioners contend that the 2001 assessment was invalid and therefore respondent improperly verified the applicable law. Petitioners argue that respondent failed to issue a notice of deficiency notwithstanding that petitioners' 2001 tax liability constituted a deficiency under section 6211.

Although respondent concedes that no notice of deficiency was issued, respondent argues that petitioners' tax liability as determined does not constitute a deficiency and arose out of the mathematical errors on the return. This Court disagrees.

### 3. Validity of Assessment

This Court has no quarrel over the portion of the assessment attributable to the tax petitioners reported due on their 2001 tax return. However, this Court holds the following: (1) The portion of the assessment attributable to respondent's mischaracterization of the capital gain is not at issue, nothwithstanding the fact that the lien was filed to collect the entire amount of petitioners' tax liability, and (2) the other portion attributable to petitioners' omission of the Social Security number needed for the dependency exemption deduction is invalid.

Respondent's mischaracterization of petitioners' capital gain as ordinary income is not a mathematical error under section 6213(g). This adjustment falls squarely within the definition of deficiency under section 6211(a) and required respondent to issue a notice of deficiency. Under section 6213 the issuance of the notice of deficiency would have afforded petitioners the right to have an opportunity to petition for redetermination of the deficiency in this Court. See Freije v. Commissioner, 125 T.C.

at 35-36. However, this portion of petitioners' 2001 tax liability is no longer at issue because respondent has abated it.

The portion of the assessment attributable to the omission of the dependent's Social Security number is invalid. Although the omission of the dependent's Social Security number needed to claim a dependency exemption deduction is considered a mathematical error under section 6213(g)(2), Letter 474C issued to petitioners was improper on its face under section 6213(b)(1). That letter did not notify petitioners that the amount of tax due in excess of the amount of tax petitioners reported on their Form 1040X and their adjusted total tax liability were based on a mathematical error, did not set forth the specific error alleged, and did not adequately explain such an error. Furthermore, contrary to the fact that petitioners' representative timely challenged the assessment and requested an abatement of the assessment, respondent failed to follow the procedure under section 6213(b)(2) by instituting the collection of the assessment via levy while the abatement process relating to "the supposed mathematical errors" was occurring. Respondent's failures derogate from petitioners' rights under section 6213, thereby compelling this Court to void the portion of the assessment attributable to the omission of the dependent's Social Security number. See Freije v. Commissioner, supra at 35-36.

II. Abatement of Interest

Petitioners requested abatement of the interest accrued from the due dates of their 2001 and 2002 tax returns until the assessment of their tax.  Under section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any payment of income, gift, estate, and certain excise taxes to the extent that any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial or managerial act by an officer or employee of the Commissioner.  A taxpayer is entitled to this relief if no significant aspect of such an error or delay can be attributed to the taxpayer involved.  Id.  A taxpayer can make such a request for abatement of interest only after the IRS has contacted him in writing with respect to such a deficiency or payment.  Id.

The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  In contrast, the term "managerial act" means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel.  Sec. 301.6404-2(b)(1), Proced. & Admin.

Regs.  Any decision concerning the proper application of Federal tax law, State law, or administrative procedure cannot be considered a managerial or a ministerial act.  Sec. 301.6404-2(b), Proced. & Admin. Regs.

Congress did not intend section 6404(e) to be used routinely to avoid payment of interest but intended its application where the failure to do so "would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  This Court has jurisdiction under section 6404(h) to review respondent's decision as to whether petitioners are entitled to an abatement of interest for the tax year 2001.[5]  To prevail a taxpayer must prove that the Commissioner abused his discretion by exercising it arbitrarily, capriciously, or without sound basis of fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  In its review the Court must give due deference to the Commissioner's determination.  See id.

There is no basis on which to find that any unreasonable error or delay in petitioners' payments of interest for 2001 and 2002 is attributable to an officer or employee of respondent being erroneous or dilatory in performing a managerial or ministerial act.  It is undisputed that petitioners filed their

---

[5]The Court does not have jurisdiction to review respondent's determination for abatement of the additions to tax.  See sec. 6404(f).

2001 tax return approximately 3 years and 2 months late and their 2002 tax return approximately 2 years and 4 months late. They did not submit any payment when they filed those returns. Even when petitioners amended their 2001 return on November 5, 2007, they still did not submit any payment. Petitioners knew of the actual self-assessed amounts of tax liabilities for those tax years but chose not to pay. Petitioners and their C.P.A. could have on their own calculated the exact amount of the tax and the interest for 2001 and 2002. More specifically, petitioners did not wait for the revenue officers to calculate the interest they owed for the tax year 2001 and quickly proceeded to pay most of the liability, including the interest, without providing the revenue officers an opportunity to do so.

Petitioners also contend that the invalid 2001 assessment would be a sufficient reason for abatement of interest for that year. Nonetheless, the improper assessment of petitioners' tax liability would be considered neither a managerial nor a ministerial act under section 6404(e) because any assessment of tax liability would require the application of Federal law.

Petitioners further argue that an error was attributable to RO Barber's failing to notify petitioners of their rights to appeal her decision. Petitioners' argument is baseless because RO Barber properly sent a notice letter on October 30, 2006. Petitioners also argue that the review of RO Barber's decision

was delayed due to RO Smith's "unavailability and * * * [failure] to attend meetings he scheduled". The record does not support petitioners' assertions but indicates that petitioners contributed significantly to the delay in meeting RO Smith. Petitioner husband was the one who misplaced RO Smith's telephone number, he and his C.P.A. would not wait for RO Smith's arrival after RO Smith explained his tardiness was based on a prior commitment, and petitioner husband himself missed a scheduled meeting. Furthermore, even if RO Smith failed to attend those meetings, the failure did not cause unreasonable delay in payment of the tax since it took only 1 month for RO Smith to review RO Barber's decision and inform petitioner husband of his decision.

For reasons stated, this Court holds that the settlement officer did not abuse his discretion by denying petitioners' request for abatement of interest under section 6404(e).

### Conclusion

Although petitioners seek equitable relief from the interest accrued from the due date of the 2001 tax return until the payment of their tax liability, this Court is a court of limited jurisdiction where no such remedy is available. See Commissioner v. McCoy, 484 U.S. 3, 7 (1987). Thus, the Court holds that respondent did not abuse his discretion when he denied petitioners' request for abatement of interest under section 6404(e). This Court further holds that the Appeals Officer

abused his discretion in issuing the notices of determination to proceed with the collection of the 2001 tax liability via lien and levy, because portions of the assessment attributable to the mathematical error on petitioners' 2001 tax return were invalid under section 6213.

To reflect the foregoing,

An appropriate decision will be entered.